## AMERICAN CASUALTY CO. v. HORTON.

### No. 13016.

Court of Civil Appeals of Texas. Dallas.

April 19, 1941.

Rehearing Denied May 23, 1941.

John G. Whitaker, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

LOONEY, Justice.

William B. Horton sued the American Casualty Company to recover disability benefits on an accident policy issued by the defendant. Plaintiff was employed by the W. P. A., and at the time of his injury, April 11, 1938, was setting a water meter in a pump station, located in an excavation about 16 x 16 feet in size and from 14 to 16 feet in depth, when a chain hoist, estimated

to weigh about 150 pounds, suspended on poles above the surface, accidentally fell on plaintiff, striking him on the top of the head, crushing his skull, rendering him unconscious for two or three days, necessitating the removal of a large portion of his skull bone, leaving his brain unprotected, except by the skin and hair of his scalp. He was confined in a hospital for about three weeks, after which, went home, continued to suffer pain in his head, and from general weakness; remained in the house and bed for several weeks, except during the time he visited his physician and was walking for exercise under the advice of his physician, and ceased visiting his physician only when told that nothing more could be done for him. Since being injured, plaintiff has not been able to do any work, requiring physical activity, or the expenditure of strength, such as he had been accustomed to. On August 13, 1938, he became nightwatchman for W. P. A. at a shack kept by it, and was required simply to sleep there and guard papers and records. In general outline, the above are the material facts.

The paragraphs of the policy brought under review are denominated "Confining Accident Indemnity" and "Non-Confining Accident Indemnity," and read as follows: "Confining Accident Indemnity: If the insured in consequence of bodily injuries sustained through external, violent and accidental means, independently and exclusive of disease and all other causes, shall be immediately and continuously confined within the house, not leaving it at any time for any purpose whatsoever and regularly visited therein at least once in each seven days by a licensed physician, and shall be wholly prevented from attending to any and every kind of work or business, the Company will pay beginning with the first day of medical treatment and confinement, and continuing as long as the Insured remains so confined and disabled, but not to exceed a total of twelve months, indemnity at the rate of $50.00 a month. Non-Confining Accident Indemnity: If the insured in consequence of bodily injuries sustained through external, violent and accidental means, independently and exclusive of disease and all other causes, shall not be confined within the house, but shall be under the regular care and attendance of a licensed physician at least once in each seven days and shall be prevented from attending to any and every kind of work or business, the Company will pay beginning with the first day of medical

treatment, and continuing as long as the insured remains so disabled, but not to exceed a total of one month, indemnity at the rate of $25.00 a month."

Based on the verdict of the jury and the undisputed facts found by the court, judgment was rendered in favor of plaintiff for $625, being the maximum amount of indemnity provided. In so far as is material, the judgment reads as follows: "* * * the court finds from said verdict, as supplemented by the undisputed facts, that plaintiff, William B. Horton, sustained bodily injuries through external, violent and accidental means on April 11, 1938, and as a result thereof suffered the kind, character and degree of incapacity insured against by defendant under the confining accident indemnity clause of its policy sued upon herein, from the date of sustaining said injuries to the date of this trial; that plaintiff furnished defendant proof of his said incapacity after the expiration of one month from the date plaintiff sustained said injuries and incapacity, as found by said verdict, and thereafter that defendant denied liability under its policy, therefore the court finds that defendant waived its right to any further proofs and that plaintiff has complied with the terms of said policy with respect to furnishing proofs of his injury and disability to defendant. The court finds that plaintiff is entitled to recover of and from defendant the sum of Six Hundred Twenty-five Dollars ($625.00), together with interest thereon from date of this judgment at the rate of six per cent per annum until paid."

■ These findings by Judge and jury were authorized by evidence and are adopted as our conclusions of fact on the respective issues. The judgment, in our opinion, is well based and should be affirmed, unless one or more of the contentions of the defendant, which will hereafter be considered, are found to be well taken.

■■ The contentions of the defendant, as stated in its brief, are these: "The policy provides for two types of disability, both of which must be total, confining total disability, and, non-confining total disability, not for total and partial disability. It is defendant's contention that since plaintiff was in the hospital only three weeks ($37.50) and thereafter was not confined to his house but was totally disabled and non-confined for which the policy provides only one month at $25.00 that the total recovery

should have been $62.50. Upon another theory of the case; that is, that the policy contains a provision that failure to pay a premium on or before due date the policy shall become null and void and only three months premiums were paid which were sufficient to keep the policy in force for just two months after the date of the accident that in no event, even if totally disabled and confined, would plaintiff be entitled to recover more than two months, or $100.00. This was presented to the court in defendant's motion for judgment and motion for judgment non obstante veredicto. Disregarding the above two defensive propositions, it is definite and certain that plaintiff was working for the W. P. A. at the time of his injury on April 11, 1938, and went back to work for the W. P. A. on August 13, 1938, a period of four months and two days, which in any event would be the greatest period of time for which he would be entitled to benefits, which amounts to $203.33."

The contention that the policy provides for two types of disability, that is, "Confining Total" and "Non-Confining Total," in our opinion, is an incorrect construction. Disregarding mere evidentiary provisions, we think it is obvious that, only one type, that is, "total disability," is provided, being the condition resulting from an accidental injury received under the circumstances mentioned in the policy, for which the defendant obligated itself to pay $50 per month, not exceeding twelve months, and $25 per month, not exceeding one month. However, in order to establish total disability, the policy requires that, the injured person "shall be immediately and continuously confined within the house, not leaving it at any time for any purpose whatsoever and regularly visited therein at least once in each seven days by a licensed physician, and shall be wholly prevented from attending to any and every kind of work or business * * *." The quoted stipulation, in our opinion, is evidentiary in nature, not the subject of contract, is against public policy, and should be disregarded.

■ The undisputed facts clearly showing that, plaintiff sustained total liability, it was none the less so, whether he was confined in a house, tent, or under the blue canopy, or whether visited once a week, or at all, by a licensed physician; total disability was the condition for which the defendant obligated itself to pay indemnity. The defendant has attempted, by contract, to prescribe rules of evidence, designed to bind the courts and interfere with judicial proceedings. Rules of evidence are established by law, either statutory or at common law, adopted by statute, and are not the subject of contract. The case of Sovereign Camp v. Piper, Tex.Civ.App., 222 S.W. 649, 651, presented to the San Antonio Court the identical question which was disposed of in an opinion by Chief Justice Fly, who said: "No corporation can, by a provision in its regulations, set aside a law of Texas, and make rules of evidence to suit its own ends and desires. No such preposterous and dangerous authority has ever been granted to a corporation in Texas, or tolerated by its courts, and when beneficiaries are compelled to sue a fraternal association in order to obtain insurance due them they cannot be met by rules of evidence formulated by such association which practically repeal rules made by a Legislature of Texas. * * *" To the same effect, see Supreme Ruling, etc., v. Hoskins, Tex.Civ.App., 171 S.W. 812. In Federal Surety Co. v. Waite, Tex.Civ.App., 297 S.W. 312, 316, the court said: "We think it is evident, as said in one of the cited cases, that the requirement that the insured must be confined within her house or home is but evidentiary." In Provident Ins. Co. v. Shull, Tex.Civ.App., 62 S.W.2d 1017, the court held that, a provision calling for visits by a licensed physician is evidentiary. In American Nat. Ins. Co. v. Briggs, Tex. Civ.App., 70 S.W.2d 491, appeal dismissed, the court held that provisions of a policy of the nature of those under consideration, are merely evidentiary in their effect upon the claimant's cause of action. Also, see Inter-Ocean Casualty Co. v. Brown, Tex. Civ.App., 31 S.W.2d 333, appeal dismissed, where the court made a similar holding. Also Sovereign Camp, etc., v. Mary Boden, 117 Tex. 229, 1 S.W.2d 256, 61 A.L.R. 682; Bankers' Health, etc., v. Wilkes, Tex.Civ. App., 209 S.W. 230, 233; Southern Travelers' Ass'n v. Shattuck, Tex.Civ.App., 2 S.W.2d 568. The language of the Supreme Court of Michigan, Utter v. Travelers' Ins. Co., 65 Mich. 545, 32 N.W. 812, 816, 8 Am. St.Rep. 913, is so much in point that we conclude this phase of the discussion with a quotation from that decision; the court said: "Courts will not permit the course of justice, upon trials before them, to be stipulated or contracted in such manner as to defeat the ends to be subserved by such trials. The parties to the contract cannot agree to oust the courts of jurisdic-

tion over such contract. The operation of this clause, requiring direct and positive proof, in many cases would, in effect, preclude the court from jurisdiction and bar recovery. If they can make this agreement, they can also stipulate that the evidence must come from certain persons, or make any agreement they see fit, controlling and directing the course of proceeding upon the trial. They may contract in relation to a condition precedent before bringing suit, or in relation to anything going to the remedy, but not to the right of recovery itself. Wood Ins. 750. Circumstantial evidence is regarded by the law as competent to prove any given fact; and sometimes it is as cogent and irresistible as direct and positive testimony."

■■■■ However, it seems the case was tried on the theory that the language under consideration constituted a part of the contract; but even on that theory, we think, under the authorities, plaintiff was entitled to recover. The court charged the jury: "You are instructed that the phrase 'continuously confined within the house,' as used in the court's charge and the policy sued upon herein, does not necessarily mean a constant literal restraint within the house; and an occasional visit to the office of his physician for treatment, or taking exercise and walking as a part of the plaintiff's treatment would not necessarily mean that he was not at such times confined to his house as contemplated by the policy or contract in evidence in this case. By the phrase 'totally incapacitated,' as used in the court's charge, means such disability as would prevent William B. Horton from performing any work he is by training or experience qualified to do, or such disability as that ordinary care in the preservation of his life and health would require that he desist from any kind of work." It was with that understanding that the jury answered Special Issue No. 2, to the effect that, as the result of the injury, plaintiff was immediately and continuously confined within the house and regularly visited therein at least once in each seven days by a licensed physician, and was wholly prevented from attending to any and every kind of work or business. The courts uniformly hold that such language in a policy should not be given a literal interpretation. In Southern Surety Co. v. Diercks, Tex.Civ. App., 250 S.W. 755, 756, writ refused, the trial court charged the jury that: "Confinement to the house does not necessarily mean a constant literal restraint within the house; and an occasional visit to the office of her physician for treatment, or taking exercise and walking as a part of the plaintiff's treatment would not necessarily mean that she was not at such times confined to her house as contemplated by the policy or contract in evidence in this case." Passing directly upon the correctness, whether or not, of this charge, the Court of Civil Appeals said: "We are of the opinion that there was no error in the instruction given. The courts have repeatedly held that the language used in contracts of this character is not to be given a literal construction [citing authorities]." To the same effect, see Washington Fidelity Nat. Ins. Co. v. Smith, Tex.Civ. App., 80 S.W.2d 413; Washington Nat. Ins. Co. v. Booker, Tex.Civ.App., 123 S.W. 2d 975, 977; National Benev. Soc. v. Price, Tex.Civ.App., 32 S.W.2d 683; also, Standard Acc. Ins. Co. v. Brock, Tex.Civ.App., 1 S.W.2d 678, appeal dismissed.

■■■ The defendant's second proposition is that, because plaintiff only paid premium sufficient in amount to keep the policy alive for two months after the date of the accident, he was entitled to only two months' indemnity, or $100. To this, we cannot agree. The policy being in full force and effect when plaintiff was accidentally injured, resulting in total disability, his cause of action immediately arose, and he was entitled to recover the full amount of indemnity provided, irrespective of whether or not the policy was kept alive by the subsequent payment of premiums.

■■■ Defendant also insists that, because plaintiff began serving W. P. A. as night watchman, on August 13, 1938, four months and two days after being injured, he was not entitled to recover more than $203.33. To this, we cannot agree. As night watchman, plaintiff was not at work in the sense that he had previously worked. The position required no physical exertion—simply that, he sleep in the shack and guard the records kept there. He was forty-three years of age at the time of the injury, was reared on a farm, accustomed all his life to hard physical labor, such as cultivating crops, cutting wood, hewing cross-ties, working at a sawmill and, during the ten years preceding the injury, had worked in Dallas, part of the time for the Water Department of the City, laying pipe and doing other heavy work and, for several months just prior to the accident, had been working for W. P. A., fitting pipes, pumps, and do-

ing concrete work, all heavy and laborious. He was not qualified by either education or training to enter upon and discharge the duties of a business employment, such as clerking, bookkeeping, etc.

The term "total disability," resulting from an injury, as used in insurance contracts, means an injury that disqualifies the injured person from performing his usual and customary tasks in such a way as to enable him to procure and retain employment, and does not imply absolute disability to perform any kind of labor. The undisputed facts show, and the serious nature of plaintiff's injury clearly indicates that he is no longer qualified to perform acceptably the usual and customary tasks that previously he had discharged, hence, in the future will be driven, perforce of his physical condition, to seek lighter and less onerous tasks.

The assignments and propositions urged for reversal, in our opinion, being without merit, are overruled, and the judgment of the trial court is affirmed.

Affirmed.