INTERCOAST MUTUAL LIFE INSURANCE COM-
PANY AND INTERCOAST INSURANCE ASSO-
CIATION, APPELLANTS, *v.* LOIS W. ANDERSEN,
RESPONDENT.

No. 4192

November 5, 1959          345 P.2d 762

*Gray and Young,* and *James R. Brooke,* of Reno, for Appellants.

*Stewart, Horton, Campbell and Free,* of Reno, for Respondent.

458

## OPINION

By the Court, BADT, J.:

Respondent's assignor, Royal Stewart, was injured in a skiing accident February 3, 1957 and sustained a spiral fracture of the bones of the left leg. Hospitalization, medical treatment, discharge, and return to his usual pursuits followed. He was at the time of his accident covered by the provisions of an insurance policy issued by appellants, and was paid by appellants under the terms of his policy. This policy lapsed November 10, 1957 for failure to pay premiums.

On October 12, 1957, some eight months after the first injury, but a month before the policy lapsed, Mr. Stewart, while engaged in calisthenics in preparation for the coming ski season, slipped and fell, causing a transverse fracture of the same leg. He entered St. Mary's Hospital in Reno on that date and remained

there until October 16, 1957. It was not until November 29, 1957 that X-ray photographs demonstrated the fracture. On January 2, 1958 he entered Washoe Medical Center for treatment and surgery. Appellants refused to pay hospital, surgical, and other benefits under the policy accruing after November 10, 1958 on the ground that the policy had lapsed on such date, that his claim had not originated prior to that date, that the second fracture was in part caused by the first fracture, and accordingly did not arise from a separate and distinct cause, and was not suffered directly and independently of all other causes. Each of such contentions was based on sundry exclusionary clauses in the policy.

The issues before the district court were confined entirely to a construction of the policy clauses involved. The learned trial judge, before whom the case was tried without a jury, construed these clauses in favor of the plaintiff, and the two defendant insurance companies have appealed from the resulting judgment.

The policy in question contains various conditions, restrictions, and limitations recited in the several sections of the instrument. These occur (1) under the general provisions, (2) under the hospitalization section, (3) under the hospitalization medical section, (4) the surgical section, and (5) the accident expense section.

Appellants contend that certain clauses or expressions in each one of these sections exclude plaintiff's assignor from the coverage claimed, or otherwise negative appellants' liability. It becomes necessary to examine each one of the provisions in question.

(1) The general provisions. These provide (in general, specific, repeated and redundant verbiage) that the coverage exists only for the term during which the policy is in force and terminates on the last day for which the insurance premiums have been paid; but that "such termination shall be without prejudice to any *claim originating prior thereto.*"

We have supplied the emphasis of the clause subject to this phase of the dispute. As noted in our recital of

the facts, the policy terminated November 10, 1957. The accident occurred October 12, 1957, during the policy coverage. Hospitalization, treatments, and other expense covered a period not only to November 10, 1957, but also four days from January 2, 1958 until January 6, 1958. Appellants contend that if the *claim originates* subsequently to termination no benefits may be provided and that it is obvious that *claims* do not *originate* until the insured receives the necessary hospitalization or surgical services; that here, since the services were rendered after the expiration of the policy, no valid claim for such services could be asserted.

In support of this contention appellants rely upon Van Zanten v. National Casualty Company, 333 Mich. 28, 52 N.W.2d 581, which contains language appearing to support this contention, saying that claims for hospital services, after the date of the termination of the policy (though growing out of an accident occurring during the coverage period), did not *originate* prior to the termination of the policy because "such provision, we think, must be construed as having reference to the benefits accruing while the insurance was in effect."

Appellants clinch the reasoning of Van Zanten in the following language: "In conclusion, respondent is obviously confused over the use of the word 'claim' throughout the policy. Perhaps it should be pointed out that the *accident* gives rise to the disability, which in turn gives rise to the *loss,* which in turn gives rise to the *claim* * * *. It is the *claim* which *must* originate prior to the termination of the policy, not merely the *accident* and the resulting *disability*." In answer to a question from the court during the oral argument, appellants forcefully asserted their contention as follows: Question. If an insured is injured on the first of the month, requiring hospitalization and treatment to the tenth of the month, but the term of the policy expires on the fifth of the month, it is your contention that the company is liable only for the hospitalization up to the fifth but not for the hospitalization from the fifth to the tenth? Answer. Yes.

Although some of the facts appearing in Van Zanten

and some of the provisions of the Van Zanten policy differ from those in the instant case, it must be conceded that on the whole the language used by the Michigan court would appear to support appellants' argument. Other cases, however, are not in accord. The general statement of the text writer found at 45 C.J.S. 977, Insurance, sec. 897, is:

"Where an accident policy is in full force and effect when insured sustains an accidental injury, his cause of action arises immediately, regardless of whether the policy is kept alive by subsequent payment of premiums, and he is entitled to recover the full amount of indemnity provided."

The text is supported by reference to American Casualty Company v. Horton (Tex.Civ.App.), 152 S.W.2d 395, in which the court said, id. 399:

"The defendant's second proposition is that, because plaintiff only paid premium sufficient in amount to keep the policy alive for two months after the date of the accident, he was entitled to only two months' indemnity, or $100. To this, we cannot agree. The policy being in full force and effect when plaintiff was accidentally injured, resulting in total disability, his *cause of action immediately arose,* and he was entitled to recover the full amount of indemnity provided, irrespective of whether or not the policy was kept alive by the subsequent payment of premiums." (Emphasis supplied.) As here applied we see no distinction between the originating of a claim and the arising of a cause of action. When the cause of action arises, the claim originates. It may be noted that under Nevada Rules of Civil Procedure, which follow the Federal Rules, we have in virtually all instances substituted the expression "plaintiff's claim" for the expression in the old civil practice act "statement of a cause of action." Rule 7(a) NRCP requires the filing of a complaint and Rule 8(a) provides what shall be contained in such "a claim for relief." Under Rule 8(b) the defendant must state his defense to such "claim." Under Rule 8(e) statements of a "claim" may be made alternately or hypothetically. Thus under the federal rule the word "claim" is used to denote the facts

which give rise to a right enforceable in the courts. Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189. And the use of the term "claim" in place of "cause of action" has in many instances broadened and liberalized the latter term. See White v. Holland Furnace Co., Inc., D.C., 31 F.Supp. 32.

Our conclusion that respondent's claim originated while the policy was in force is reinforced by provisions appearing under other sections of the policy. Under the hospitalization section providing coverage for amounts charged for drugs, X-rays, laboratory examinations, and other hospital services a typewritten provision added to the printed policy reads: "The hospitalization benefits will be renewed when * * * the dates of hospital discharge and readmission are separated by a return to active full-time work * * *."

Under the accident expense section, if other coverage does not fully indemnify the insured for the treatment for his accidental injuries, there is further indemnification up to a maximum of $300. While it is true that this provision is made dependent upon the fulfillment of all other conditions of the policy, this additional coverage is available if the surgical or hospital treatment commences within 90 days after the injury. No reference is made to a commencement date as of the originating of the claim.

(2) Hospitalization section. Exclusion from the benefits under this section is asserted by appellant by reason of the provision that the benefits therein provided are "for each particular physical disability *arising from a separate and distinct cause.*" This contention is based upon a single statement on the part of the doctor who attended respondent's assignor. The doctor testified on direct examination that the accident was a new fracture of the leg on or about October 12, 1957, and was caused by "whatever exercise he was doing at home in the way of calisthenics; that the presence of the stainless steel screw [inserted in treatment of the first fracture] did not fracture the leg, but that whatever exercise he was

doing fractured the leg." On cross-examination he testified that the bone had fully healed between the time of the June fracture and the time of the second fracture in October; that for all practical purposes the bone heals so as to become as strong after the fracture as it was before; that the insured is not a light person and that the doctor remembered seeing him walking up and down the street "on his own" for three and one-half months with no disturbance in the leg; that it was true that there is some absorption around the threads of the steel screws and that the screw caused the bone to absorb and give it a weakened area in the bone itself. He was then asked: "Q. That was probably a contributing factor to the [second] fracture at that time? A. It was a contributing factor."

By reason of the testimony that the stainless steel screw inserted after the first fracture "contributed to" the second fracture, it is contended that the latter did not arise "from a separate and distinct cause." A careful reading of the doctor's testimony, however, indicates that he was describing a possible weakened condition of the leg that would make it more susceptible to a fracture if subjected to a sufficient strain—a condition rather than a cause. See Mutual Life Insurance Co. v. Dodge, 4 Cir., 1926, 11 F.2d 486, 59 A.L.R. 1290. This, nonetheless, left the second fracture as arising from a separate and distinct cause, namely, the calisthenics in which Mr. Stewart was engaging. In any event, this phase of the problem requires a construction of the policy clause involved, and we think it proper to apply the rule that the ambiguity, if any, should be resolved in favor of the insured. Ismert-Hincke Milling Co. v. American Credit Indemnity Co., 8 Cir., 224 F.2d 538. We accordingly find no error in the trial court's construction of the provisions of the hospitalization section to hold that the coverage applied.

This is reinforced by the provisions of the general section to the effect that the termination provisions "shall be without prejudice to any claim originating prior thereto." It is also reinforced by the provision in the

hospitalization section to the effect that the hospitalization benefits will be renewed when the dates of hospital discharge and readmission are separated by return to active full-time work. In this respect Mr. Stewart testified that after he was discharged by Dr. Becker he returned to full-time activities; that all the braces had been removed; that he was walking on his leg; that in July he helped move the office furniture (cabinets and desks, etc.) downstairs from his former upstairs location in the office building, and had no difficulties with his leg until the second fracture of October 12.

3. Hospitalization medical section. This provides for daily benefits when an insured is entitled to benefits under the hospitalization section. As we hold contrary to appellants' contentions with reference to the hospitalization section, it automatically follows that benefits under the hospitalization medical section apply.

4. Accident expense section. This provides for an additional indemnity up to $300 if the insured is not otherwise fully indemnified. It is challenged because it applies only when the injury is suffered "directly and independently of all other causes." We have above held that such was the case despite the doctor's testimony that the screw inserted in the earlier fracture "contributed to" the second fracture. The trial court's conclusion that plaintiff's assignor was likewise entitled to the benefits of this section was accordingly without error.

Appellants place emphasis on the repeated use of the word "insured" as being entitled to benefits. This they connect with the provisions fixing the time when the policy lapsed after which respondent was again hospitalized. They thus conclude that respondent was not "the insured" at the time. We think however that the term "the insured" as thus used in the policy was simply *descriptio personae* and was not intended to apply to respondent only in the technical character that would automatically exclude him from benefits arising out of the accident which occurred prior to the lapsing of the policy.

The district court's judgment in favor of respondent was based upon findings that listed in detail the items of recovery to which plaintiff was entitled under the several sections of the policy. No error is asserted in the tabulation other than the contention that they are all within the exclusionary provisions of the contract. Such contentions we have held to be without merit.

Affirmed with costs.

McNAMEE, C. J., and PIKE, J., concur.