Miltou M. Haven, J.
This is an action to recover benefits upon a Family Major Medical Expense Policy, which insured the plaintiff, his wife and children against medical expenses arising from accident and sickness. The policy contained a $250 deductible clause and provided that the company would pay 80% of all medical expenses above this amount for the items listed.
The case comes to this court on a stipulated set of facts. Elizabeth A. Kirchoff, wife of the plaintiff, went to St. Francis Hospital where she had a normal delivery of a child on July 24, 1961. She remained in the hospital until July 29, 1961, at which time she and the infant were discharged.
The facts further indicate that the child was born with a right congenital hernia. In the best interest of the infant’s health, the operation was postponed, however, until September 18, 1961. At that time a herniotomy was performed at Vassar Hospital and the child was discharged on September 20,1961.
The services of the hospital and doctors during the confinement of Mrs. Kirchoff amounted to $474.90 and the expenses incurred for correcting the hernia amounted to $288.
Defendant forwarded the plaintiff two checks, one in the amount of $179.92 and the other for $30.40. These sums were arrived at in the following manner: $474.90 less $250, the deductible amount, leaving a balance of $224.90 of which $179.92 or 80% was paid for the confinement; $288 less $250 the deductible amount, leaving a balance of $38 of which $30.40 or 80% was paid on the herniotomy.
Plaintiff rejected both of the checks claiming that under the provisions of the policy there should be but one deductible amount applied to all the charges. Defendant contends, however, that the bills involved two separate charges and it was, therefore, proper to apply the deductible amounts to each one separately.
Certain pertinent provisions of the policy in question must be considered by the court in its attempt to resolve the conflicting constructions urged by the parties.
Those provisions of the policy of insurance which concern us provide:
*683 “ mSUBIHG AGB-EEMEHT
“5 * * * which deductible amount shall apply separately to each Insured Family Member, and to each accident or sickness, except that only one deductible amount shall apply: * * *
“ c. to all charges incurred as a result of childbirth, including charges incurred for the infant, until and including the fourteenth day after the date of such birth.
“ DATE OF CHARGE
‘ ‘ A charge shall be deemed to be incurred as of the date of the service or purchase giving rise to the charge.”
The law is established that where an insurance policy contains ambiguities, they must resolve against the insurer as the party who drafted the instrument. (Fidelity & Cas. Co. of N. Y. v. Groth, 53 N. Y. S. 2d 623, affd. 270 App. Div. 976, affd. 296 N. Y. 788.) The meaning to be given to a contract of insurance must be the meaning that the ordinary business man must give it (D’Agostino Excavators v. Globe Ind. Co., 7 A D 483; Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn., 305 N. Y. 243; Harris v. Allstate Ins. Co., 309 N. Y. 72, 75).
‘ ‘ A contract of insurance is to be construed according to the sense and meaning of the terms used, which if clear and unambiguous, are to be understood in their plain, ordinary and popular sense (Auerbach v. Maryland Cas. Co., 236 N. Y. 247). However, if there is any ambiguity the provision will be construed most strongly against the insurer, and in favor of the insured.” (Black v. Hanover Ins. Co., 30 Misc 2d 1081, 1083; see Goldstein v. Standard Acc. Ins. Co., 204 App. Div. 452, 455-456.)
In the case of Johnson Corp. v. Indemnity Ins. Co. (6 A D 2d 97, 99, affd. 7 N Y 2d 222) the court held: “ In seeking to ascertain the scope to be given words or phrases not explicitly defined in an insurance policy, we usually ascribe to them the ordinary and popular meaning, importing the construction that would be given them by the average assured when he purchased the policy (Abrams v. Great Amer. Ins. Co., 269 N. Y. 90; Johnson v. Travelers Ins. Co., 269 N. Y. 401, 408). * * * When uncertainty and doubt arise from policy language susceptible of more than one meaning, we may adopt the oft-quoted but seldom decisive formula of resolving all ambiguity against the insurer ”. (See Kratzenstein v. Western Assur. Co., 116 N. Y. 54, 59.)
The law is well established, and the cases too numerous to cite sustaining the principle, that if there is any doubt as to the meaning of its terms, the language in the policy of insurance should be given the meaning most favorable to the insured,
*684 It is stated in tjie case of Salta Knitting Mills v. Elegnelle Realty Corp. (16 Misc 2d 198, 200-201): “ Where reasonable * * * men on reading the terms of an ambiguous insurance contract would honestly differ as to its meaning, the doubt should be resolved against the company and if the company desires to exclude from its general coverage or limit its liability, it has the responsibility of wording it in clear and unmistakable language so that no average person can be misled (Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y., 309, 311, 313).”
The Court of Appeals has held in Mansbacher v. Prudential Ins. Co. (273 N. Y. 140, 143-144) “We have said more than once that insurance policies upon which the public rely for security in death, sickness or accident, should be plainly written, in understandable English, free from fine distinctions which few can understand until pointed out by lawyers and judges. * * * Contracts are to be interpreted in the light of the language which we commonly use and understand; in other words, our common speech. Such, at least, should be the rule applied to the interpretation of these policies, and which we sometimes refer to as a liberal construction.”
This litigation is primarily concerned with the proper construction to be placed upon the provisions of the policy set out above.
Research has failed to disclose any cases construing the specific language in a policy of insurance similar to the wording presented to this court. Accordingly, this matter will have to be disposed of on the principles of construction heretofore decided by the courts. The court must be ever mindful of the fact that if an insurance policy “ is fairly susceptible of two interpretations, one of which being that contended for by the insured, it should, be most strongly construed against the insurer.” (Bushey & Sons v. American Ins. Co., 237 N. Y. 24, 27.)
In seeking to ascertain the scope and meaning of the provision of the policy, “ A charge shall be deemed to be incurred as of the date of the service or purchase giving rise to the charge ’ we ascribe to it the ordinary and popular meaning, importing the construction that would be given it by the average assured when he purchased the policy.
In pursuing the supporting guides to determine the construction of the questionable provision of the policy, we make reference to the case of Maryland Casualty Co. v. Thomas (289 S. W. 2d 652 [Tex. Civ. App.]), wherein the wording “ expenses incurred ” has been carefully analyzed. In rejecting the claim of the insurance company that the use of the phrase ‘ ‘ expenses *685 incurred ” as used in the policy, meant expenses of services that had already been rendered or performed within one year from the date of the accident, the court held that the insurer was liable for all reasonable expenses for repairs of the child’s injuries, whether the services correcting them wore or were not performed within one year from the date of the accident. The case held that ‘ ‘£ incurred ’ means to become liable for, or subject to, to render liable or subject to; £ incur ’ means something beyond contract, something not embraced in the word £ debt ’. * * * In an action for injuries, recovery may be had for amounts shown to have been expended or incurred for hospital hills and medical treatment, provided such damages are properly pleaded; 1 incurred ’ means to become liable for.”
In support of its conclusion, the court in the Maryland Casualty case (supra) said that a debt has been incurred when liability attaches, and that a contingent promise to pay has been incurred when the contingency upon which the payment depends occurs, so that the insurance company became liable for all reasonable expenses caused by the accident on the day it occurred.
The court is satisfied that the “ charges incurred ”, as indicated by the policy of insurance do not differ from the words ‘1 expenses incurred ’ ’ and refers to the date on which the accident or sickness occurred. In the case at bar, the “ charges incurred ” pertain to the time that the compensable accident occurred and that would be at the time of the birth of the child. It was at that time that the congenital hernia was detected and that was well within the 14-day period referred to in subdivision c of paragraph 5 of the policy.
The policy itself provides an idem per idem definition of “ charges incurred ”. It says ££ a charge shall be deemed to be incurred as of the date of the service or purchase giving rise to the charge.”
Webster’s New International Dictionary (2d ed.) defines ££ give rise to ” as follows: ££ to originate; produce; occasion.” In the case of Pipes v. World Ins. Co. of Omaha (150 F. Supp. 370, 380) it is stated £ 1 ‘ originate ’ usually means ‘ begins, starts, commences.’ ”
Viewed in their context and applied to the instant facts, we think the words ££ giving rise to the charge ” were intended to refer to the occurrence of the event giving rise to the claim of liability and not to the accrual of liability. This conclusion gives the contract a fair and reasonable interpretation and will not lead to harsh and unreasonable results. (Aldrich v. New York Life Ins. Co., 235 N. Y. 214, 224.)
*686 It is not uncommon that an accident insurance policy which was in force at the time the insured suffered an accidental injury terminates while medical treatment or hospitalization is still being furnished to the insured. In these eases it is submitted that- the view which is supported by the closely reasoned cases is that the liability of the insurer for medical expenses continues even after the termination of the policy. (Intercoast Mut. Life Ins. Co. v. Andersen, 75 Nev. 457.)
This viewpoint is based upon the theory that all claims under an accident policy originate at the time the compensable accident occurs.
It is stated in Corpus Juris Secundum (Yol. 45, Insurance, § 897, p. 977) “Where an accident policy is in full force and effect when insured sustains an accidental injury, his cause of action arises immediately, regardless of whether the policy is kept alive by subsequent payment of premiums, and he is entitled to recover the full amount of indemnity provided.”
In the case of Greiper v. National Cas. Co. (1 A D 2d 806 [5.]) the policy provided for loss of life and accidental bodily injuries sustained while the policy was in force. Injury occurred two months before the expiration date of the policy. Defendant contended that it was the loss rather than the accident which must occur during the period the policy was in force. The court held ‘1 the fact that the insured may have died after the expiration of the date of the policy does not terminate any liability of the company under the insuring clauses of the contract. ’ ’
In the case of McCleneghan v. London Guar. & Acc. Co. (132 Neb. 131) the plaintiff had an accident and developed a hernia. The hernia was not observed nor the operation performed until after the 90-day limitation period of the policy had elapsed. The court held that where an accident policy provided for the payment of surgical benefits if an operation as the result of an accidental injury was necessary within 90 days of the date of the accident, and it appeared that an operation was necessary immediately after the accident, but was not performed until more than 90 days had elapsed, that the fee for the surgery was properly allowed under the terms of the policy.
The apparent purpose of the clauses in question was to compensate the policyholder for charges incurred as a result of childbirth, including charges incurred for the infant, until and including the 14th day after the date of such birth. The sense and meaning of the words used indicate that the charges were incurred at the time when the claim of liability arose. That claim originated when the congenital hernia was dis *687 covered in the infant and it was well within the 14-day period referred to in the policy. The fact that the medical expenses for the correction of this condition continued and extended beyond that time limitation did not exculpate the defendant from its responsibility of treating this expense as part of the charge of childbirth. This view seems to be supported by the authorities and there was unquestionably a continued service of required medical treatment which was uninterrupted and unbroken, except for the postponement of the operation required for the best interest of the infant’s health.
It follows, therefore, that plaintiff is justified in his claim. Accordingly, the court finds that the confinement of the wife and the confinement of the infant are to be considered as one charge, totalling $762.90. From this amount will be subtracted the deductible amount of $250 leaving a balance of $512.90 of which the defendant is to pay 80%. Judgment is granted the plaintiff against the defendant for $410.32.