No. 12555

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

BETTY L. WARDLOW,

Plaintiff and Appellant,

-vs-

KALISPELL GENERAL HOSPITAL and
BLUE CROSS OF MONTANA,

Defendants and Respondents.

Appeal from: District Court of the Eleventh Judicial District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Measure, Cumming and Salansky, Columbia Falls, Montana
James A. Cumming argued, Columbia Falls, Montana

For Respondents:

Korn, Warden, Walterskirchen and Christiansen, Kalispell,
Montana
Church, Harris, Johnson and Williams, Great Falls,
Montana
Donald A. LaBar argued, Great Falls, Montana

Submitted: November 26, 1973

Decided: FEB 15 1974

Filed: FEB 15 1974

Thomas J. Keasney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an action wherein plaintiff Betty L. Wardlow stated a claim against defendants Kalispell General Hospital and Blue Cross of Montana for failure to pay claimed medical benefits due her as a result of an illness. Plaintiff appeals from a summary judgment entered by the district court of Flathead County dismissing defendant Blue Cross as a defendant. Defendant Kalispell General Hospital is not a party in this appeal.

Plaintiff was employed by Kalispell General Hospital as a licensed practical nurse on December 6, 1964. On December 31, 1964, she applied and was accepted for membership in the hospital's health insurance group, Blue Cross of Montana. By agreement, Mrs. Wardlow paid her premiums for the first three months and subsequently premiums were paid to Blue Cross by the hospital without deduction from Mrs. Wardlow's wages.

In the last week of May 1965, Mrs. Wardlow's doctor informed her she had cervical cancer requiring immediate treatment. On or about May 31, 1965, she informed her employer of the emergency and inquired about leave and her health insurance coverage. She testified by deposition that at the time she was in an emotionally distressed and frightened state of mind. She stated she inquired of Eleanor Disbrow, the hospital employee administering the Blue Cross group health plan, concerning her premium payment due during her leave of absence for sickness, which she understood had been granted to her. She testified Mrs. Disbrow told her "Don't worry about a thing, everything is completely all right, your insurance is just fine."

The "Hospital Personnel Policy" which was furnished to all new employees provided that sick leave was available only after six months of full time employment and accumulated at the rate of one day per month up to a total of 24 days and that employees on leave of absence must pay their own Blue Cross premiums to continue membership.

- 2 -

Under the care of a Billings physician, Mrs. Wardlow commenced treatment for her cancer condition on June 1, 1965. She was hospitalized at St. Vincent's Hospital in Billings from June 13 to June 17, 1965, and again from June 24 to July 25, 1965, at which time she was released as cured.

The Kalispell General Hospital notified Blue Cross on or about July 2, 1965, that Mrs. Wardlow's employment had been terminated. It does not appear that the hospital notified Mrs. Wardlow. She contends she first learned of her termination in August 1965, when she attempted to resume work.

On July 2, 1965, Blue Cross mailed a form notification letter to Mrs. Wardlow at her home address, advising her of nonpayment of premiums and stating that she must pay $37.05 for the period from June 15 to September 15, 1965, to avoid a lapse in coverage. Mrs. Wardlow contends she did not receive the notice.

Mrs. Wardlow incurred medical expenses totaling approximately $1,800. Blue Cross paid hospital expenses totaling $170.95. Blue Cross counterclaimed for $46, contending that Mrs. Wardlow's coverage ended on June 15, 1965, and the payment made by Blue Cross for hospitalization covered the period from June 13 through June 17, 1965.

Plaintiff presents six issues on appeal:

1. Was plaintiff entitled to termination notice from Blue Cross?

2. If so, did Mrs. Wardlow receive termination notice?

3. Was the treatment for the cancer condition commenced prior to termination of her coverage?

4. If the treatment was commenced prior to termination of coverage, was the entire course of treatment for the same illness covered?

5. Were the alleged representations made by the hospital to Mrs. Wardlow imputable to Blue Cross?

6. Was summary judgment proper?

The issues contain mixed elements of law and fact and are such that finding of merit in any one of them would constitute grounds for reversal of the summary judgment. The record does not disclose the legal rationale applied by the district court in granting summary judgment.

In her third, fourth and sixth issues on appeal, plaintiff contends that her Blue Cross coverage was in force at the time her physician informed her of the cancer condition and at the time she commenced treatment for it. She contends that occurrence and commencement of the peril insured against while the contract was in force obligates the insurer to pay directly related and continuing expenses.

Plaintiff asserts no cases have been found dealing in the hospitalization insurance area, therefore she cites cases involving accident and disability policies which extend the insurer's liability to furnish subsequent ensuing medical expenses. Intercoast Mutual Life Insurance Co. v. Andersen, 75 Nev. 457, 345 P.2d 762, 75 ALR2d 870.

Intercoast Mutual Life is favorable in many respects, but differs substantially in the contract language. There, considerable weight was given to the "ambiguity, if any" contained in the termination clause of the policy --- "* * * such termination shall be without prejudice to any claim originating prior thereto." (Emphasis ours).

Blue Cross contends that if this principle were applied to group health coverage the insured would no longer have to pay premiums once she became sick, and construes plaintiff's argument to mean she is entitled to membership in Blue Cross and resulting benefits, but not required to pay premiums after she became sick.

Here, we do not view the problem to be, as Blue Cross contends, but offers no supporting authority, whether or not plaintiff was entitled to continuing membership without payment of premiums. The instant litigation presents the problem of payment of benefits under the contract after termination. It does not concern continued membership.

- 4 -

Involved is a health service contract which provides hospital and medical benefits for its members. The contract does not distinquish between health coverage and accident coverage. The same limitations and conditions, so far as pertinent to this case, apply to the hospital and medical coverage.

To resolve the issues here, we look to the terms of the contract and employ the rules generally applicable to the interpretation of insurance contracts. We must also resolve all ambiguities in an insurance contract in the light most favorable to the insured.

The contract provision involved here which governs eligibility and benefits states:

> "This is to certify that, in consideration of the payment of required membership dues, the Subscriber whose name appears on the membership card, and such eligible members of his or her family (if any) who have been accepted for membership, are entitled to the benefits hereinafter described subject to the terms, conditions, and limitations set forth in this Certificate."

Following this provision the benefits, terms, conditions and limitations are set forth in Articles I through IX. As stated heretofore, the contract is silent as to cause of hospitalization and merely deals in services. The contract is also silent as it pertains to when the right to receive benefits will vest. There are no specific conditions concerning the termination of benefits, once vested under the contract. The matter of dues and termination of membership is covered in Article VII:

> "VII. CHANGES IN MEMBERSHIP DUES OR PROVISIONS OF THIS CERTIFICATE AND TERMINATION
>
> "a. Provisions of this Certificate or Membership dues may be changed at any time by the Board of Trustees of the Plan by mailing written notices thirty (30) days or more prior to the date of change to the Subscriber or the employer of the organization in which the Subscriber participates in a group. Payment of the first payment due after the effective date of the change shall be deemed as conclusive proof of the Subscriber's agreement with the change.
>
> "b. This Certificate is terminated immediately upon non-payment of dues. In such event,

reinstatement of this Certificate shall be at the sole discretion of, and under such conditions as may be specified by the Plan.

"c. This Certificate may be terminated by the Plan by giving the Subscriber at least thirty (30) days prior written notice, however, <u>if a Member is receiving hospital service on the date of termination, benefits shall be provided under this Certificate until the discharge of the Member from the hospital or until all days of care available under this Certificate are used---whichever shall first occur.</u>

"d. This Certificate may be terminated by the Subscriber by giving the Plan at least thirty (30) days prior written notice. Dues, if any, paid by the Subscriber beyond the date of termination will be refunded by the Plan." (Emphasis ours).

The only reference to benefits is the reference contained in subsection "c", which continues benefits when cancellation is at the hand of Blue Cross, however there is no exclusionary language in the section concerned with voluntary termination (subsection "d"), or termination for nonpayment of dues (subsection "b"). To the contrary subsection "b" seems to be subject to reinstatement at the discretion of Blue Cross. Testing this contract by any rule, we have to conclude that the matters and distinctions urged by Blue Cross are either not covered by the contract or at best are ambiguous.

The problem here is treated from two points of view in a majority opinion and a concurring opinion in a 1970 Washington case, Myers v. Kitsap Physicians Service, 78 W.2d 286, 474 P.2d 109. There the majority opinion holds the contract open to more than one reasonable interpretation and because of the ambiguity it was resolved in favor of the insured, following a contingent event vested right theory. The majority opinion cites 75 ALR2d 876(1961) as a reasonable application to a health service contract. This is a citation objected to in the instant case by Blue Cross as pertaining only to "accident" coverage and not applicable.

The concurring opinion in <u>Myers</u> recognizes this position but because of the ambiguous language construes the contract in favor of the employee for whose benefit the group contract is drawn.

For the purpose of our consideration of the contract involved here both views are reasonable under the circumstances and we so hold.

The factual issue---whether the expenses were incurred in the continuing course of treatment of an illness contracted during the period the coverage was in force and effect---is a disputed material fact. Accordingly, we find the district court erred in granting summary judgment dismissing Blue Cross as a defendant.

We need not discuss the remaining issues raised by plaintiff, except to state that under the express terms of the contract existing between the litigants, we find them to be without merit.

The order granting summary judgment is reversed and the cause remanded to the district court for further proceedings.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

- 7 -

Mr. Justice Wesley Castles dissenting:

I dissent.

The facts reveal that Wardlow read the hospital's personnel policy which stated clearly that an employee was not entitled to sick leave until six months of service as a full time employee. She did not qualify. Neither, under the personnel policy, did she establish a leave of absence and at no time did she attempt to pay a premium for the period involved. Appellant Wardlow made various allegations against the hospital, which, if proven, may have merit against the hospital, but these allegations cannot support a claim against respondent Blue Cross.

In my view, summary judgment in favor of Blue Cross was proper, and I would affirm.

------------------------------------------
Justice