Lee WASHER, Appellant,

v.

CONTINENTAL CASUALTY COMPANY, Appellee.

No. 18.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Sept. 20, 1967.

Rehearing Denied Oct. 11, 1967.

Harry Burns, Houston, for appellant.

Raybourne Thompson, Jr., and Vinson, Elkins, Weems & Searls, Houston, for appellee.

BARRON, Justice.

This is an action on a family hospital, nursing, medical and surgical expense policy brought in the trial court by appellant, Lee Washer, against appellee, Continental Casualty Company, who issued the policy. Both parties filed motions for summary judgment and the case was heard on both motions on written stipulations of fact. The trial court overruled appellant's motion and granted the motion of the insurer appellee, Continental Casualty Company. Appellant, Washer, has perfected his appeal to this Court. There is no dispute as to any fact. The fact stipulations are as follows:

"1. The policy marked Exhibit "A" to this stipulation is a true and correct copy of policy Number 1961262 issued to Lee Washer.

"2. All prerequisites and conditions precedent necessary to be performed, if such policy is found to be in force, have been complied with.

"3. During the year of 1963 and early in the year of 1964, after the issuance of policy marked Exhibit "A" to plaintiff by defendant, Mrs. Iona J. Washer sustained a "sickness" as defined by said policy.

"4. As a direct result of such sickness Mrs. Iona J. Washer was, on February 28, 1964, operated on for an acoustic neuroma.

"5. On February 28, 1964, Mrs. Iona J. Washer was confined in a hospital by reason of such sickness which is referred to in Stipulation No. 3.

"6. On May 10, 1965, Mrs. Iona J. Washer underwent a hypoglossal facial anastomosis as a result of such sickness referred to in Stipulation No. 3.

"7. On July 8, 1966, Mrs. Iona J. Washer was operated on for recurrent acoustic neuroma as a result of such sickness referred to in Stipulation No. 3.

"8. The operation of July 8, 1966 and the medical expenses made the basis of plaintiff's suit resulted from a continuous sickness which existed prior to February 28, 1964.

"9. Mrs. Iona J. Washer is "family of insured" named in the policy.

"10. All medical bills made the basis of plaintiff's suit were incurred in connection with the operation of July 8, 1966.

"11. All such medical bills were reasonable and necessary for the July 8, 1966 operation and treatment of Mrs. Iona J. Washer's sickness.

"12. One-Hundred Eighty-Two and .80/100 Dollars was paid by defendant, Continental Casualty Company for doctor bills incurred by reason of the hypoglossal facial anastomosis performed on May 10, 1965 as the result of such sickness.

"13. If plaintiff is entitled to recover, he is entitled to recover the sum of $1,938.40 as the hospital bill, $317.20 as doctor bills, $155.00 for personal attendance in hospital, vacational nurses expense of $21.37 pursuant to the terms of such contract, plus twelve percent statutory penalty interest and reasonable attorney fees.

"14. The deposition of Dr. J. Randolph Jones, which is filed in the papers of the cause, constitutes a part of this stipulation.

"15. If the Court finds that the plaintiff is entitled to recover it is hereby stipulated that the Court may set a reasonable attorney's fee.

"16. On the 20th day of July, 1965, more than five days prior to the premium due date, defendant mailed to plaintiff, Lee Washer, at his last address as shown by the records of the company, the letter marked Exhibit "B" to this stipulation.

"17. There is no extrinsic ambiguity which in any manner affects the policy marked Exhibit "A" to this stipulation.

"It is agreed and consented to by and between the parties to the captioned cause that the foregoing stipulations may be used for any and every purpose in the captioned litigation."

The policy made the basis of appellant's suit dated February 20, 1958, provides for payment of certain benefits in the event insured, or a specifically named dependent, is confined to a hospital. Mrs. Washer, wife of appellant, was first confined in a hospital as a result of sickness on February 28, 1964. She was next confined in a hospital as the result of the same sickness on May 10, 1965. The insurance company gave notice of cancellation of the policy effective August 1, 1965. Mrs. Washer was confined in a hospital on July 8, 1966 as a result of the continuous sickness which existed prior to February 28, 1964. All medical and hospital expenses made the basis of appellant's suit were incurred by reason of the hospitalization and operation of July 8, 1966.

This entire controversy revolves around two paragraphs in Part I of the insurance policy, and this Court's construction of these two paragraphs is vital to determination of legal rights and liabilities of the parties. The paragraphs are as follows:

"Indemnity paid under this Part only for expenses listed herein which are incurred within two years after the date of the accident or within two years after the commencement of the *first* hospital confinement resulting from the sickness which is the basis of claim * * *"

"If, following a period for which expense is payable under this policy by reason of any *one* period of sickness, no expense covered by this policy is incurred as a re-

sult of such sickness for a period of six consecutive months, but thereafter expenses are incurred from the same cause, such expense so incurred shall be *deemed to be the result of a different sickness* and compensable as a new period of sickness, subject to a new Deductible Amount."

Since it is stipulated that Mrs. Washer's first hospital confinement for her continuous sickness was on February 28, 1964, and that this suit was brought for medical bills incurred on or about July 8, 1966, it is evident that the expenses for which appellant brings suit were incurred more than two years after the first hospital confinement for such illness, and therefore the expenses sought in this action are not recoverable under the policy using the date of February 28, 1964 as the measure. Appellant admits in his brief that the two-year limitation period would, if standing alone, bar his recovery. The fact that this sickness was actually a continuous one in fact cannot be controverted.

■ But the second paragraph of the policy which provides that in any one period of sickness, when no expense is incurred as a result of such sickness, for a period of six consecutive months, but thereafter expenses are incurred from the *same cause,* such expense so incurred shall be deemed to be the result of a *different* sickness, and compensable as a new period of sickness, does not require that the date of February 28, 1964 be used as the beginning date. Mrs. Washer, as we have said, was confined in a hospital on May 10, 1965, which was more than six months from the first operation of February 28, 1964, and during the life of the policy. According to the terms of the second paragraph above, this operation and resulting expense in 1965 is mandatorily regarded under the terms of the policy as a *different* sickness and compensable as a *new period* of sickness. The company chose to cancel the policy effective August 1, 1965, which concluded the liability of the company and the insured, except for expenses of

sickness resulting directly from the "different sickness" of May 10, 1965.

[2] We believe the law is settled in Texas that cancellation of a policy of this type must be without prejudice to any claim originating prior to the effective date of cancellation. Drinkard v. Group Hospital Service, Inc., 366 S.W.2d 637 (Tex.Civ. App.) error ref., n.r.e.; American Bankers Insurance Co. v. McDonald, 369 S.W.2d 688 (Tex.Civ.App.), writ dismd.; American Benefit Association v. Russell, 278 S.W.2d 316 (Tex.Civ.App.), writ dismd.

■ But the parties by their contract must treat reoccurring episodes as a "different" sickness under the clear terms thereof. The only expenses for which the insured appellant may recover under the policy are those incurred while he or his dependent is confined in a hospital. It is only when no expenses payable under the policy are incurred for a period of six months that such can be deemed to be a *different* sickness. If it is remembered that Mrs. Washer's last period of confinement during the life of the policy was May 10, 1965, and that her next period of confinement was July 8, 1966, we can arrive at no other conclusion than that more than six months had elapsed between confinements, and that the confinement of July 8, 1966 must be a different illness as defined in the second paragraph quoted above. While it is understood that appellee's liability extended past the date of cancellation on August 1, 1965, the policy agreement requires that Mrs. Washer's confinement be no later than six months from May 10, 1965 if liability is to continue. The company's liability here expired six months from May 10, 1965. Consequently, we must affirm the judgment below in favor of appellee.

We are bound to give clear and valid provisions of the contract effect.

The judgment of the trial court is affirmed.