Edwadine FORBAU, as Next Friend
of Amy Miller, Petitioner,

v.

AETNA LIFE INSURANCE COMPANY,
Respondent.

No. D–1235.

Supreme Court of Texas.

Jan. 5, 1994.

Supplemental Dissenting Opinion on
Motion for Rehearing Jan. 5, 1994.

Dissenting Opinion on Motion for
Rehearing May 5, 1993. ▪

Alton R. Griffin, Ralph H. Brock, Lubbock, C.L. Ray, Charles B. Lord, Law Offices of C.L. Ray, Austin, for petitioner.

John P. LeVick, Jeffrey B. Jones, Jones Flygare Galey Brown & Wharton, Lubbock, for respondent.

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HECHT, ENOCH, and SPECTOR, Justices, join.

Petitioner's motion for rehearing is overruled. We withdraw our opinion of May 5, 1993, and substitute the following opinion in its place.

▪ In this case we are called upon to determine whether the insurance policy at issue created a vested right in unlimited lifetime benefits, or restricted benefits to the recovery of medical expenses incurred while the policy was in effect. The trial court rendered judgment on a jury's verdict in

favor of Petitioner, Edwadine Forbau, as next friend of Amy ·Miller. The court of appeals reversed the trial court's judgment, holding that under the unambiguous terms of the policy, Petitioner's recovery was limited to those medical expenses incurred while Aetna's policy was in effect. 808 S.W.2d 664. We agree that Aetna's policy is unambiguous and does not afford the coverage claimed by Petitioner. We thus affirm the judgment of the court of appeals.[1]

## I.

In March of 1983 fourteen-year old Amy Miller suffered serious, permanent, and disabling injuries as a result of a motor vehicle accident. At the time, Amy's father, Mike Miller, was insured under an Aetna group insurance policy (Group Policy) issued to Affiliated Foods, Inc., a cooperative of grocery stores of which his employer, E Triple M, Inc., was a member. Miller's premiums and those of his dependents, including Amy's, were paid by E Triple M. Miller was eligible as an "individual" under the plan, defined as an "employee of any store owner who is a participant under this plan;" Amy was eligible for dependent coverage as an "individual's unmarried child under nineteen years of age." Group Policy at 1500, 1550.

After Amy's accident, Aetna paid her medical expenses as incurred until April 30, 1985, when Affiliated terminated the group contract with Aetna. Aetna continued to pay benefits until May 1, 1986, under the policy's one-year extension of benefits clause. After that date, Petitioner submitted claims to Safeco Life Insurance Company as Aetna's successor insurer for Affiliated's members. A dispute eventually arose between Petitioner and Safeco, which resulted in a lawsuit and settlement.

After settling with Safeco, Petitioner filed this lawsuit against Aetna, alleging breach of contract and of fiduciary duty, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act and the Insurance Code. Only the breach of contract claims were submitted to the jury. In accordance with the jury's verdict, the trial court awarded Amy $238,000 in past damages, $2.5 million in future damages, and $500,000 in attorneys' fees.

## II.

■ Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts. *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex.1992); *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953).

■ When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex.1980). This court is bound to read all parts of a contract together to ascertain the agreement of the parties. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex.1965); *Pan Am. Life Ins. Co. v. Andrews*, 161 Tex. 391, 340 S.W.2d 787 (1960). The contract must be considered as a whole. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex. 1987); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Moreover, each part of the contract should be given effect. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987). For example, when a contract provision makes a general statement of coverage, and another provision specifically

---

1. We also agree with the court of appeals that the issue of whether the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1988) (ERISA), preempts Petitioner's state law claims in this case is "immaterial." 808 S.W.2d at 665 n. 2.

We do note, however, that although the result—a judgment favorable to Aetna—would be the same in this case under ERISA and state contract law, we disapprove of the court of appeals' statement to the extent that it suggests that the remedies under ERISA are identical to those available under a state law contract action. The remedies available under ERISA are a declaratory judgment on entitlement to benefits, an injunction against a plan administrator's improper refusal to pay benefits, removal of the fiduciary, and an award of benefits due and attorneys' fees. 29 U.S.C. § 1132(a)(3). ERISA's remedies are exclusive, and do not include extracontractual compensatory or punitive damages. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987).

states the time limit for such coverage, the more specific provision will control. *See* 3 ARTHUR L. CORBIN, CONTRACTS §§ 545–54 (1960). This is but an application of our long-established rule that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121 S.W.2d 579, 583 (1938); *see also Wynnewood State Bank v. Embrey*, 451 S.W.2d 930, 932 (Tex. Civ.App.—Dallas 1970, writ ref'd n.r.e.).

### III.

■ The operative language in this policy states that Aetna will pay for "covered medical expenses *incurred during a calendar year for treatment of a covered family member.*" Group Policy at 6210 (emphasis added). Under the contract, Aetna is obligated only to a covered family member, that is, a covered individual or dependent. A person ceases to be a covered individual when the policy has been discontinued or the individual is no longer employed by the policy's sponsor. When this occurs, dependent coverage also terminates.[2]

The policy also states that "[t]his policy does not provide insurance for any of the following: Charges incurred while he is not a covered family member." Under the unambiguous language of the contract, Aetna's obligation to pay benefits under the contract terminated upon the discontinuance of Affiliated's policy, unless some other provision of the policy extended coverage. As the contract contains such a provision,[3] which extended Petitioner's benefits for one additional year, she was entitled to the additional benefits Aetna paid for this time period only.[4] Under basic tenets of contract law,

these provisions must be read together with the other sections of the contract to comprehensively address the rights and obligations of all parties to the insurance contract.

■ Petitioner urges that the policy afforded her a right to receive payment for all future medical services related to any accident occurring during the policy period. That interpretation is based on the following clause:

If any benefit ceases to apply to an individual or a dependent, coverage for that benefit will cease immediately but without prejudice to any rights under the benefit established by this person while the coverage was in force.

Group Policy at 1850. Petitioner further urges that even if this clause does not explicitly provide her with coverage, it at least creates an ambiguity which must be interpreted in favor of coverage. However, not every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity. *See Preston Ridge Fin. Servs. v. Tyler*, 796 S.W.2d 772, 777 (Tex.App.—Dallas 1990, writ denied); *Medical Towers v. St. Luke's Epis. Hosp.*, 750 S.W.2d 820, 822 (Tex.App.—Houston [14th Dist.] 1988, writ denied). The "without prejudice" clause by its own terms preserves the right to benefits "established ... while the coverage was in force." It does not create new rights or benefits beyond those afforded by the other provisions of the policy. And it is undisputed that Aetna paid the benefits to which Petitioner was entitled—payment of charges incurred · while she was a covered dependent and for the one-year extension.

---

**2.** Coverage of an individual terminates when the policy is discontinued or when the individual's employment terminates. Group Policy at 6000. "Any Dependant Coverage of an individual will terminate ... when the individual ceases to be in a class of individuals eligible for such Dependant Coverage." Group Policy at 6010.

**3.** The policy provides:
   If coverage for a family member ... terminates while he is totally disabled, any benefit provided ... for that family member will continue to be available for expenses incurred while he

continues to be totally disabled but not beyond 12 months from the termination date. Group Policy at 6210.
This section applies only to claims made under the Major Medical, Comprehensive Dental, or Comprehensive Benefit sections of the contract.

**4.** From May 1, 1985, until April 30, 1986, Aetna paid claims for medical benefits and nursing care under the policy's one-year extension of coverage. After that year passed, Petitioner submitted no further proofs of loss to Aetna.

Accordingly, we affirm the judgment of the court of appeals.

DOGGETT, Justice, joined by HIGHTOWER and GAMMAGE, Justices, delivered this Supplemental Dissenting Opinion on Petitioner's Motion for Rehearing.

[January 5, 1994]

In again rejecting Amy's plea for relief, the majority leaves all Texans without the security that should be at very core of health insurance.

At least today's substituted opinion has abandoned footnote five of the majority's prior writing, which suggested that ambiguities are not to be resolved against the insurer in an ERISA plan. *See* 36 Tex.Sup.Ct.J. 860, 864 n. 5. I have previously explained the reasons for rejecting this regressive rule. *See* 36 Tex.Sup.Ct.J. 860, 865–66, 869 (Doggett, J., dissenting).

However, the decision announced today remains wrong now for the other reasons it was wrong before, ° specifically the same "sweeping anti-consumer alteration of our longstanding method for interpreting insurance policies." *Id.* at 866. For this reason, I continue to dissent.

## DISSENTING OPINION ON MOTION FOR REHEARING

[May 5, 1993█]

DOGGETT, Justice, dissenting.

With the switch of a vote on rehearing, the law announced in this case a short while ago

is no longer the law. Continuing to believe that this court's prior decision was correct, I incorporate it fully in this opinion.[1] *See* Appendix A.

The new majority opinion rejects our recent determination in *Gorman v. Life Ins. Co. of North Am.*, 811 S.W.2d 542, 547–48 (Tex.1991), and a substantial body of federal law [2] in refusing to treat Amy Miller's breach of contract pleading as a claim for benefits due under ERISA. *See* 36 Tex.Sup.Ct.J. 860, 863–864. This misapplication of the doctrine of federal preemption [3] is sufficient to achieve an Aetna victory and to create considerable injustice for Amy and others like her who have already secured judgments based on determinations that they have been illegally denied health care benefits. Unfortunately this is not enough for the majority when even more mischief can be accomplished by reaching out to address state law issues totally unnecessary to this judgment. First, in dicta it embraces the minority view that ambiguities in ERISA plans are not construed in favor of coverage. *See id.* at 864–865 n. 5. Despite then having two independent bases upon which to render judgment for Aetna, the majority then moves on to enact a sweeping anti-consumer alteration of our longstanding method for interpreting insurance policies.

Contrary to the repeated writings of this court in *Balderama v. Western Casualty Life Ins. Co.*, 825 S.W.2d 432, 434 (Tex.1991); *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d

nyn's original dissent, which is found at 36 Tex. S.Ct.J. 148 (Nov. 6, 1992).

**2.** *See* Appendix A, *infra* at 136.

**3.** Overly expansive interpretation of the preemptive scope of the Employees' Retirement Income Security Act (ERISA), has substantially barred the application of state law to group insurance policies. *See Cathey v. Metropolitan Life Ins. Co.*, 805 S.W.2d 387, 394 (Tex.1991) (Doggett, J., concurring) ("ERISA has become 'quicksand' that 'will continue to expand and to preempt everything in its meandering path'") (quoting *Jordan v. Reliable Ins. Co.*, 694 F.Supp. 822, 835 (N.D.Ala.1988)).

**1.** This is the approach employed by then Justice Calvert when he experienced a similar change on rehearing. *See Pan Am. Life Ins. Co. v. Andrews*, 161 Tex. 391, 340 S.W.2d 787, 796 (1960) (Calvert, J., dissenting) ("My views of the case and concerning a proper decision ... remain the same as when they were expressed as the views of the majority in the attached opinion, and I accordingly now file the opinion as a dissent."). My prior opinion makes reference to Justice Cor-

663, 666 (Tex.1987); and many others, ambiguities will now be construed against the insurer only after the court attempts to remove any ambiguity through manipulation of general rules of contract interpretation. 36 Tex.Sup.Ct.J. at 864–865 n. 5. While it has never been, nor should it be, the law of Texas that an insured creates an ambiguity merely by filing suit, any policy subject to reasonable, conflicting interpretations had, until today, been considered ambiguous. But now the majority declares that, if the insurer creates an ambiguity by taking away in specific fine print most of the rights accorded the policyholder in the big print, the fine print will control. If courts always look to the *whole* document and must read even directly conflicting provisions together "to ascertain the agreement between the parties," 36 Tex.Sup.Ct.J. at 864, no insurance policy will ever be held ambiguous, and individual provisions that could reasonably be read to provide coverage will be uniformly ignored.

Amy Miller, a young quadriplegic, now leaves this court with nothing—without any of the means that a judge and jury in Lubbock, Texas thought essential to meeting her lifetime medical needs over the course of her now bleak future. But even more far-reaching is today's evisceration of previously well established state law designed to provide reasonable protection to insurance policyholders. The impact of today's opinion is potentially devastating to the rights of Texans who rightly expect their premiums to pay for more than the paper on which their policies are written. I dissent.

HIGHTOWER, GAMMAGE and SPECTOR, JJ., join in this opinion.

## APPENDIX A

We consider whether cancellation of a comprehensive group accident and health insurance policy, subject to the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1988), terminates a plan participant's right to obtain payment of particular medical expenses resulting from a permanently disabling injury suffered during the policy term. Under the policy provisions applicable here, the insurer remains obligated to cover medical expenses resulting from that injury that are already being provided at the time of termination.

### I.

In March 1985, fourteen year-old Amy Miller suffered serious accidental injuries that required extensive medical treatment, including lengthy hospital and rehabilitation clinic stays. She was left a permanently disabled, spastic quadriplegic, in need of twenty-four hour supervision. When injured, Amy was insured under a "Group Life and Accident Health Insurance Policy" with Aetna Life Insurance Company, obtained through E Triple M, Inc., a grocery store operated by Amy's father, Michael. Aetna continued paying her health care expenses until May 1986, one year after being succeeded as the group carrier by Safeco Life Insurance Company. At that time Safeco commenced payment of benefits, under its group policy, which was later converted to an individual policy for Amy. Safeco's subsequent nonpayment resulted in litigation that has been separately resolved.

This action was brought against Aetna on behalf of Amy by her mother, Edwadine Forbau,[1] alleging breach of contract, bad faith, and violations of the Deceptive Trade Practices Act, Tex.Bus. & Com.Code §§ 17.-41—17.826, and of the Insurance Code. Tex. Ins.Code art. 21.21. The trial court granted Aetna's motion for instructed verdict on all of Amy's claims except breach of contract. Based upon a jury verdict finding damages of $283,000 for medical expenses in the past and $2,500,000 for the future, as well as $500,000 in attorney's fees, the trial court rendered judgment for Amy. The court of appeals

---

1. Not at issue in this appeal is the trial court's summary judgment in favor of another defendant, Affiliated Foods, a cooperative through which E Triple M obtained the Aetna group policy.

reversed and rendered a take nothing judgment. 808 S.W.2d 664.

## II.

Aetna contends that ERISA preempts Amy's breach of contract action under state law and that because she did not plead ERISA, her action is totally barred. ERISA preempts state law actions that "relate to any employee benefit plan," a term that encompasses both pension plans and those providing insurance. *See* 29 U.S.C. §§ 1144(a), 1002(3), 1002(1). By paying a part of the premiums of its employees to Aetna, E Triple M maintained an employee welfare benefit plan under the terms of ERISA, *see Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 242 (5th Cir.1990), and Amy's claim is preempted as "relating to" this plan governed by federal statute. *See Cathey v. Metropolitan Life Ins. Co.*, 805 S.W.2d 387, 389–90 (Tex.1991); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39, 46 (1987); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983).

ERISA's civil enforcement section authorizes a plan participant or beneficiary to bring an action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). State courts have concurrent jurisdiction with federal courts over such actions. *Id.* § 1132(e). The effect of applying ERISA was considered in *Gorman v. Life Ins. Co. of North Am.*, 811 S.W.2d 542, 548 (Tex.1991), where Justice Gonzalez wrote for a unanimous court that a "breach of contract claim ... may be characterized as a claim for benefits due under the terms of the plan," and that

> the fact that the claim is alleged in terms of state law does not preclude the court from adjudicating the case under the provisions of ERISA if state law is found to be preempted.

*Gorman*, 811 S.W.2d at 548. This conclusion is consistent with that of a number of federal courts that have authorized state law actions to proceed as claims under ERISA, despite preemption. *See Kuntz v. Reese*, 760 F.2d 926, 935 (9th Cir.1985), *vacated on other grounds*, 785 F.2d 1410 (9th Cir.) (per curiam), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); *Kelly v. Pan–Am. Life Ins. Co.*, 765 F.Supp. 1406, 1408 (W.D.Mo.1991); *Powell v. Bob Downes Chrysler–Plymouth, Inc.*, 763 F.Supp. 1023, 1027 (E.D.Mo.1991); *Davis v. John Alden Life Ins. Co.*, 746 F.Supp. 44, 49 (D.Kan. 1990); *Board of Trustees of Cedar Rapids Pediatric Clinic, P.A., Pension Plan v. Continental Assurance Co.*, 690 F.Supp. 792, 795 (W.D.Ark.1988). In claiming that Aetna was prejudiced because Amy asked for damages for breach of contract rather than "benefits due" under ERISA, the dissent ignores these federal authorities which have approved essentially the same approach that we adopted in *Gorman*. While the preemptive effects of ERISA are farreaching, we are not inevitably compelled, as the dissent urges, to construe the law in every case against whomever seeks benefits due. We therefore address the merits of Amy's claim in the context of ERISA.

## III.

While the federal common law of contracts must be applied in interpreting policy terms for purposes of ERISA, *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987), we do so by drawing from state law to the extent it is consistent with the purposes and policies underlying ERISA. *See Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 973 (5th Cir.1981) (allowing interpretation under federal common law of pension plan's terms in light of a worker's pre-ERISA state law rights); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 281 (7th Cir.), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990) (federal common law rules properly developed from state law "consistent with the policies underlying the federal statute at issue") (citation omitted); *Building Serv. Employees Pension Trust v. American Bldg. Maintenance Co.*, 828 F.2d 576, 578 (9th Cir.1987) (applying California contracts principles as federal

law). Accordingly, we look to the law of Texas in applying federal common law to resolve whether cancellation of a comprehensive group accident and health insurance policy terminates a plan participant's right to obtain payment of particular medical expenses resulting from a permanently disabling injury suffered during the policy term.

Amy contends that Aetna's responsibility to pay certain nursing care vested at the time she was injured, and that its contractual commitment would therefore extend to all such resulting expenses regardless of whether the group policy had been terminated. Aetna maintains that Amy's right to recover medical expenses accrues as these are incurred, and that its obligation extends only to those health care services actually received during the stated period of coverage. Resolution of this dispute requires careful review of the actual terms of the policy—if plain and unambiguous, they must be given effect; if susceptible to more than one reasonable interpretation, resort must be had to rules of construction. *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984); *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977).

This contract, entitled a "Group Life and Accident and Health Insurance Policy," provides "Comprehensive Medical Expense Benefits." [2] By choosing these descriptive terms, Aetna has itself identified this as a comprehensive accident policy, rather than as the less extensive incurrence-of-expense policy now urged. Likewise, in the "Application for Group Coverage" prepared by it, Aetna depicted coverage for "comprehensive

medical expenses" as "unlimited." Such an unlimited, comprehensive accident policy is subject to a reasonable construction that all expenses resulting from an injury occurring while the policy is in force are covered, regardless of when incurred.[3]

Largely ignoring the foregoing, the court of appeals concluded that Aetna provided an incurrence-of-expense policy with no post-termination coverage by relying instead on a number of unconnected clauses:

On page 4100, "COMPREHENSIVE MEDICAL EXPENSE BENEFITS" are explained: "If Covered Medical Expenses are *incurred* ... for treatment of a *covered family member,* Aetna will pay ..." (*emphasis added*).

On page 3500, "Incurred Charge" is defined as: "The charge for a service or supply is considered to be incurred on the date it is furnished."

Page 4800 includes the "GENERAL EXCLUSIONS" which state that the "policy does not provide insurance for ... [c]harges incurred as to a person while he is not a covered family member."

On page 6000, a "TERMINATION OF COVERAGE" clause outlines that "[c]overage of an individual will terminate upon ... [d]iscontinuance of this policy as to such coverage."

808 S.W.2d at 666.

These four provisions provide little guidance. The first does not explain or otherwise define "Comprehensive Medical Expense Benefits." Rather, as a prelude to listing particular covered medical expenses, it indicates that if these are "incurred during a calendar year, for treatment of a covered family member, Aetna will pay a benefit...." [4] Neither the definition of "incurred

---

**2.** Group Life and Accident and Health Insurance Policy at 1012–13 [hereinafter "Group Policy"].

**3.** Although unable to explain away this policy language, the dissent disparages it as mere "captions." 36 Tex.Sup.Ct.J. 140 at 150 (Cornyn, J., dissenting). But captions or headings that are "repugnant or misleading as to the requirements or coverage in the policy," *Mosby v. Mutual Life Ins. Co. of N.Y.* [405 Ill. 599], 92 N.E.2d 103, 107 (Ill.1950), create an ambiguity which must be resolved in favor of the insured. *See Wise v.*

*Westchester Fire Ins. Co.*, 463 F.2d 386, 389–90 (10th Cir.1972) ("the language of this caption as well as all other policy provisions ... should be interpreted as meaning what a reasonable person in the position of the insured would understand it to mean"); *see also Johnson v. Lincoln Nat'l Life Ins. Co.*, [69 Ohio App.3d 249], 590 N.E.2d 761, 765 (Ohio Ct.App.1990); *Mohan v. Union Fidelity Life Ins. Co.* [207 Pa.Super. 205], 216 A.2d 342, 348 (Pa.Super.Ct.1966).

**4.** Group Policy at 4100.

charge" as one considered to be "incurred on the date it is furnished," nor any other contractual provision explicitly limits payments to those "incurred" as there defined.[5] Similarly, the phrase "covered family member" in the third provision is nowhere defined, although Amy presumably would be included, since it is undisputed that she was a covered dependent. If the policy provides comprehensive and unlimited coverage to such family members, vesting when the injury occurs, there is no reason why Amy cannot be seen as still "covered" beyond termination. Finally, although the termination provision stops coverage "upon ... [d]iscontinuance of [the] policy," it is not clear whether coverage ceases for future injuries or rather for future expenses resulting from injuries that have already been covered.[6]

These disparate sections of the policy do not combine to create an exclusion. It is incumbent on the insurer that any "intent to exclude coverage must be expressed in clear and unambiguous language." *National Union Fire Ins. Co.*, 811 S.W.2d at 555. *See also Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex.1990). This Texas rule of construction furthers the Congressional purpose of "protect[ing] interstate commerce and the interests of participants in employee benefit plans and their beneficiaries ...," 29 U.S.C. § 1001(b). This same rule of construing ambiguities against the insurer is part of the federal common law for purposes of interpreting an ERISA plan. *See Masella v.*

Blue Cross & Blue Shield of Conn., 936 F.2d 98, 107 (2d Cir.1991); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538–41 (9th Cir.), cert. denied, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990); *Phillips v. Lincoln Nat'l Life Ins. Co.*, 774 F.Supp. 495, 498 (N.D.Ill. 1991); *Emter v. Columbia Health Services*, [63 Wash.App. 378], 819 P.2d 390, 392–93 (Wash.Ct.App.1991); see also Kane v. Aetna Life Ins., 893 F.2d 1283, 1286 (11th Cir.), cert. denied, [498] U.S. [890], 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). But see Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150 (8th Cir.1990);[7] *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192, 1200 n. 11 (10th Cir.1992) (noting federal circuit split regarding application of this rule to an ERISA case, but declining to reach the question). The dissent demands uniformity when only disagreement exists among the federal circuits. 36 Tex.Sup.Ct.J. 140, 148–149 (Cornyn, J., dissenting). In this situation, our responsibility as an independent state court is to assist the federal judiciary in shaping ERISA law. The dissent would deprive Texas a voice in that basic process.

Exclusions must be explicit to ensure that a policyholder's reasonable expectation of coverage is not thwarted. *See Kulubis v. Texas Farm Bureau Underwriters Ins. Co.*, 706 S.W.2d 953, 955 (Tex.1986); *Kelly Assocs., Ltd. v. Aetna Casualty & Sur. Co.*, 681 S.W.2d 593, 596 (Tex.1984); *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 347 (Tex.1976). Texas has traditionally construed terms in insurance contracts "from

---

5. Counsel for Aetna conceded at oral argument that the exact term "incurred charge" appears in no "pertinent benefit section."

6. Another section not discussed by the court of appeals is an extension of benefits clause providing that when coverage "under a benefit" terminates while a covered person is totally disabled, any benefit will be available for up to one year beyond cancellation. Group Policy at 6210. While appearing to contemplate that *all* benefits would continue for a year, meaning full coverage, this section does not clarify whether other specific benefits already being received could be continued beyond that year.

7. The dissent favors the minority view that under ERISA any disputed plan language must be construed "without deferring to *either* party's interpretation." *Brewer*, 921 F.2d at 153. Incredibly, this assertion is based on *Firestone Tire & Rubber*

Co. v. Bruch, 489 U.S. 101, 112, 109 S.Ct. 948 [955], 103 L.Ed.2d 80, 93 (1989), which explicitly rejected an employer's attempts to "afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted", and further noted that "[a]ctions challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of contract law." 489 U.S. at 112–14 [109 S.Ct. at 955–56].

Today we follow a rule of insurance policy construction adopted throughout this nation. Application of this rule is fully consistent with the *Firestone* holding that, in exercising de novo review of a plan administrator's denial of benefits, courts must not defer to the administrator's interpretation of the plan. 489 U.S. at 112 [109 S.Ct. at 955].

the viewpoint of the insured." *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 557 (Tex.1976); *see also Commonwealth Bonding & Casualty Ins. Co. v. Bryant* [113 Tex. 21], 240 S.W. 893, 894 (1922) (considering the insured's reasonable belief as to coverage in interpreting policy language). Where an insurer has not "clearly limited benefits," "the reasonable understanding of employees" is an appropriate consideration under ERISA, a purpose of which is "protecting the reasonable expectations of plan participants." *Henglein v. Informal Plan* [974 F.2d 391, 400], Nos. 91–3379, 91–3413, 1992 WL 215935, at *6–7 (3d Cir. Sept. 8, 1992).[8]

In the language of the subject policy, we find no clear intention to avoid responsibility for legitimate medical expenses arising from an injury that occurred prior to termination. The policy, read as a whole, at the very least could reasonably be construed to afford comprehensive accident insurance rather than coverage limited to expenses incurred during the policy term. The court of appeals nonetheless found the policy to be "clear, unambiguous and susceptible of only one meaning which leaves nothing to be construed." 808 S.W.2d at 667. In concluding that no additional contractual benefit was accorded by the "plain language" of the contract, the court of appeals also focused on the following clause:

> If any benefit ceases to apply to an individual or a dependent, coverage for that benefit will cease immediately for that person but *without prejudice* to any rights under the benefit [sic] established by the person while the coverage was in force.

*Id.* at 666 (emphasis added). The court explained:

> This clause would only be pertinent if the policy was in effect, and a covered individual was receiving a particular *benefit* at a time when that benefit was going to cease to be a [sic] provided by the policy. In such a case, which is not before us, cessation of the benefit would not accrue to the detriment of the individual who was receiving that particular benefit and who would continue to be covered by the remainder of the policy.

*Id.* n. 4.

Under an alternative reading, Amy alleges that her right to benefits vested "while the coverage was in force," and that this right therefore could not be "prejudiced" upon termination. Lacking a definition of "benefit,"

---

8. The concept of considering the policyholder's reasonable expectations is a cause of great consternation for the dissent. As at least one of its cited commentators indicates, there is a difference between reliance on reasonable expectations as a factor in the interpretation of *ambiguous* provisions and in their use to disregard *unambiguous* provisions. *See* Roger Henderson, "The Doctrine of Reasonable Expectations in Insurance Law After Two Decades" 51 Ohio St. L.J. 823, 827 (1991). The insured's expectations are frequently considered in the interpretation of inexact policy language. *See Simon v. Continental Ins. Co.,* 724 S.W.2d 210, 212 (Ky.1987) (policyholder's expectations are an "essential tool in deciding whether an insurance policy is ambiguous, and consequently should be interpreted in favor of the insured"); *Sparks v. Republic Nat'l Life Ins. Co.* [132 Ariz. 529], 647 P.2d 1127, 1135 (Ariz.1982) (policy "language should be viewed from the standpoint of the average layman who is untrained in the law or insurance"); *Myers v. Kitsap Physicians Serv.* [78 Wash.2d 286], 474 P.2d 109, 111 (Wash.1970) (considering interpretation of "average man purchasing insurance"); *Brown v. City of Laconia* [118 N.H. 376], 386 A.2d 1276, 1277 (N.H.1978) ("insurance policies are interpreted from the standpoint of the average layman"); *Gowing v. Great Plains Mut. Ins. Co.* [207 Kan. 78], 483 P.2d 1072, 1075 (Kan. 1971) (in construing ambiguous provisions, "we must ascertain that meaning of the contract which the insured would reasonably expect") (quoting *Gray v. Zurich Ins. Co.* [65 Cal.2d 263, 54 Cal.Rptr. 104], 419 P.2d 168, 171 (Cal.1966)). Disregarding these authorities and this distinction, the dissent misattributes the latter approach about which it comments at length on concerns in no way raised by today's writing. *See* 36 Tex.Sup.Ct.J. at 152, 153 (Cornyn, J., dissenting). The dissent would have been better advised to rely upon the conclusion of its own source:

> No insurance system can be fair and equitable where would-be insureds are deprived of the opportunity to participate intelligently in the system because of some obfuscating factor that is beyond their control. The principle of reasonable expectations emerged in recognition of the need to eliminate these barriers to intelligent participation. It has evolved over the past two decades into a doctrine that balances the needs of insureds against those of insurers. . . .

Henderson, *supra,* at 853.

the policy contains no controlling term that precludes Amy's interpretation of her coverage. A "benefit" is "a payment or service provided for under an . . . insurance policy." *Webster's Ninth New Collegiate Dictionary* 144 (1989). In construing such a term, we are charged with using its plain or "popular" meaning. *Ramsay,* 533 S.W.2d at 346. The word benefit as used in the "without prejudice" clause could mean that any medical payment or service already being provided would not cease upon termination.

The policy does contain a second "without prejudice" clause that appears to comport more closely with the meaning ascribed to the first clause by the court of appeals. It is, however, worded differently:

> If coverage for a family member *under a benefit section* terminates while he is totally disabled, any benefit provided by the section for that family member only will continue to be available for expenses incurred while he continues to be totally disabled, but not after 3 months from the termination date.[9]

Under this language, particular payments under a "benefit section" will continue if the policy is altered or terminated or if the family member is for any other reason no longer covered. This second provision seems to discuss the ongoing receipt of the limited and *"particular benefits"* contemplated by the court of appeals. 808 S.W.2d at 664 n. 4. Aetna should not be presumed to intend the same meaning in two provisions when it uses different language in each—*"any* benefit" rather than "any benefit provided *by the section* for that family member." (emphasis added). Furthermore, the second "without prejudice" clause contains an explicit limitation on the duration of coverage. Because no such limitation exists in the first clause, we must presume that it was intentionally ex-

cluded from that clause. Such an alternative reading would avoid duplicative readings of differently worded provisions.

This reasonable interpretation, in conflict with that of the court of appeals, indicates an ambiguity.[10] Not only is the first without prejudice clause unclear, but even the court of appeals' reading of this contractual language is susceptible to a second meaning:

> [T]he clause "would only be pertinent if the policy was in effect [as it was here], and a covered individual [Amy] was receiving a particular *benefit* [payment for home nursing care] at a time when that benefit was going to cease [when the policy was cancelled] to be a [sic] provided by the policy." [11]

With such ambiguity present, the policy must be strictly construed "in favor of coverage." *Balderama v. Western Casualty Life Ins. Co.,* 825 S.W.2d 432, 434 (Tex.1991) (citing *Barnett,* 723 S.W.2d at 666); *see also National Union Fire Ins. Co.,* 811 S.W.2d at 555. Here Amy's contractual interpretation appears to be the more plausible alternative, but even if this were not true, we would be required to:

> [A]dopt the construction of an exclusionary clause urged by the insured so long as that construction is not [itself] unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.

*National Union Fire Ins. Co.,* 811 S.W.2d at 555; *see also Glover,* 545 S.W.2d at 761; *Barnett,* 723 S.W.2d at 666; *Continental Cas. Co. v. Warren,* [152 Tex. 164], 254 S.W.2d 762, 763 (Tex.1953).[12] Read in conjunction with the first "without prejudice" clause, the policy can certainly be interpreted reasonably to contemplate coverage for a health care benefit already being received prior to termination.

---

9. Group Policy at 6200 (emphasis added).

10. The dissent is correct that "it has never been the law of Texas" that an insured can create an ambiguity in an otherwise unambiguous policy by simply challenging the insurer's interpretation. 36 Tex.Sup.Ct.J. at 151 (Cornyn, J., dissenting). A policy is ambiguous only when susceptible to more than one *reasonable* interpretation.

11. Motion for Rehearing of Application for Writ of Error at 7 (quoting 808 S.W.2d at 666 n. 4).

12. This is true even where the one provision that may reasonably be interpreted to assure coverage for the insured is in conflict with other provisions of the contract.

A reasonable expectation of coverage finds support even in the direct testimony of Aetna's own legal officer regarding the company's other policies that include a dollar limitation on total payments. She explained that under those policies coverage extends to any medical expenses resulting from an accident *"regardless if the policy is terminated or not."* Since the total amount of bills paid in no way affects the *duration* of coverage in Amy's policy, this testimony supports construing any ambiguity in favor of coverage for her.

While we have not before been confronted specifically with whether benefits may extend beyond termination of a policy, many Texas courts have already resolved the question in favor of the policyholder. *See, e.g., Washer v. Continental Casualty Co.,* 418 S.W.2d 900, 903 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.); *American Bankers Ins. Co. v. McDonald,* 369 S.W.2d 688 (Tex. Civ.App.—Austin 1963, writ dism'd); *Drinkard v. Group Hospital Serv., Inc.,* 366 S.W.2d 637 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.); *Maryland Casualty Co. v. Thomas,* 289 S.W.2d 652 (Tex.Civ.App.— Amarillo 1956, writ ref'd n.r.e.); *American Benefit Assoc. v. Russell,* 278 S.W.2d 316, 318 (Tex.Civ.App.—Amarillo 1954, writ dism'd); *Nat'l Life & Accident Ins. Co. v. Dove,* 167 S.W.2d 257 (Tex.Civ.App.—Beaumont 1942), *aff'd on other grounds* [141 Tex. 464], 174 S.W.2d 245 (Tex.1943); *American Casualty Co. v. Horton,* 152 S.W.2d 395, 399 (Tex.Civ. App.—Dallas 1941, writ ref'd n.r.e.).

In *Drinkard,* an insured was entitled to medical benefits under two group policies.

366 S.W.2d at 637–38. After contracting cancer, she received payment for more than one year from the insurers for resulting medical expenses. Two months after ceasing her monthly premium payments, however, she suffered a recurrence, for which additional treatment was required. Refusing to pay any of those later expenses, the insurers contended, as does Aetna here, that the contingency insured against was the incurring of expenses, not the physical condition that produced them. *Id.* at 638. This argument was rejected with the conclusion that "the event or contingency insured against having occurred during the life of the policies, the refusal of the companies to pay the expenses incurred *after termination* would have constituted a breach of the contracts." *Id.* at 639 (emphasis added). Since the pertinent provisions in *Drinkard* were no more ambiguous than the "without prejudice" clause involved here, we find that case to be particularly instructive.[13]

Similarly, in *Thomas,* where the insurance policy provided that the insurer would "pay all reasonable expenses incurred within one year from the date of the accident," 289 S.W.2d at 653, the court interpreted the word "incurred" as covering:

[A]ll reasonable expenses ... for the repairs of [the insured's] injuries caused by the accident whether the services correcting them have or have not been performed within one year from the date of the accident.

*Id.* at 655. Thus, "incurred" was given its ordinary meaning of incurring liability rather than expenses.[14]

---

**13.** Contractual language that "for the purpose of benefits under this Rider, a subsequent diagnosis of cancer shall be considered a continuation of the previous cancer," was relied upon in *Drinkard* to determine that what otherwise appeared to be an incurrence-of-expense policy was really an accident policy. 366 S.W.2d at 638–39. *Drinkard* certainly cannot be disregarded, as it was by the court of appeals, solely on the grounds that an ambiguity was present in that case but not here. 808 S.W.2d at 667.

**14.** The court of appeals distinguished *Thomas* because the policy in that case failed to define "incurred." 808 S.W.2d at 667. Indeed, a result contrary to *Thomas* was reached in two other cases in which the policy did contain such

a definition. *Riverside Ins. Co. of Am. v. Cargill,* 570 S.W.2d 455 (Tex.Civ.App.—Amarillo 1978, no writ); *Northwestern Nat'l Life Ins. Co. v. Glenn,* 568 S.W.2d 693 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). The *Cargill* court reached a conclusion contrary from that of the earlier Amarillo court in *Thomas* in a case involving the same policy language. In both *Cargill* and *Glenn,* however, the entirety of the policy was apparently found to be unambiguous, and no other provision in the policy was brought to the court's attention that indicated the possibility of continued coverage, as opposed to the present policy and its "without prejudice" clause. These two cases are limited to the unambiguous contracts before those courts, and do not apply to an ambiguous policy. *See Riverside,* 570 S.W.2d at

These Texas authorities are in accord with the nationwide majority approach.[15] Much of this body of law holds that an accident or injury vests liability beyond termination based on the interpretation of the policy itself.[16] At least three times, the Texas appellate decision in *Horton*, 152 S.W.2d 395, has been relied upon by another state's supreme court in upholding benefit continuation after policy termination. *See Loesekan v. Benefit Trust Life Ins. Co.* [37 Colo.App. 493], 552 P.2d 36, 37 (Colo.1976); *Service Life Ins. Co. v. Branscum* [234 Ark. 463], 352 S.W.2d 586, 588 (Ark.1962); *Intercoast Mutual Life Ins. Co. v. Andersen* [75 Nev. 457], 345 P.2d 762, 764 (Nev.1959). Indeed, the language at issue in Nevada was similar to the instant "without prejudice" clause and was construed to establish an accident policy that provided benefits beyond termination. *Andersen*, 345 P.2d at 764 (considering language that "termination shall be without prejudice to any claim originating prior thereto"). Among those few states that appear to have adopted the minority incurrence-of-expense approach, we are unaware of any case that is not distinguishable.[17]

Commentators have also recognized that cancellation of a group accident policy does not relieve the insurer of responsibility for injuries sustained during the life of the policy. As one leading source long ago indicated:

> Where an accident policy is in full force and effect when [an] insured sustains an accidental injury, his cause of action arises immediately, *regardless of whether the policy is kept alive by subsequent payments of premiums*, and he is entitled to recover the full amount of indemnity provided.

45 C.J.S. *Insurance*, § 897, at 977 (1946) (emphasis added) (citing *Horton*, 152 S.W.2d 395. *See also* Annotation, *Cancellation or Modification of Master Policy as Termination of Coverage under Group Policy*, 68 A.L.R.2d 249, § 17[a], at 279 (1959). This rule remains the same today. *See* 1 John A. Appleman, *Insurance Law and Practice*, § 46, at 163–64 (1981) ("where the insured was disabled or hospitalized" prior to termination of the policy, "any rights [already] accrued ... will be protected by the courts"); 44 Am.Jur.2d *Insurance*, § 1869, at 865–66 (1982). *See also* 19 *Couch on Insurance* 2d, § 82:121, at 864 (Rev. ed. 1983) ("Since rights vest upon a loss, a cancellation of the [group] policy cannot destroy liability which has already attached for prior disability or death").

To limit its liability, an insurer must make explicit that it is offering only a limited cov-

---

456 (limiting its holding to "the same or similar policy provisions as before us").

**15.** *See* C.T. Dreschler, *Time of Disability or Death with Regard to Termination of Coverage under Group Policy*, 68 A.L.R.2d 150, § 2, at 156–57 (1959). *See also* C.T. Dreschler, Annotation, *Insurer's Liability under Accident Policy which Terminated after Accidental Injury but Prior to Completion of Medical Treatment, Hospitalization, and the Like*, 75 A.L.R.2d 876, § 1[a], at 877 (1961).

**16.** *See, e.g., Faruque v. Provident Life & Accident Ins. Co.* [31 Ohio St.3d 34], 508 N.E.2d 949 (Ohio 1987); *Lutsky v. Blue Cross Hosp. Serv., Inc. of Missouri*, 695 S.W.2d 870 (Mo.1985); *Sparks v. Republic National Life Ins. Co.* [132 Ariz. 529], 647 P.2d 1127 (Ariz.1982), *cert. denied*, 459 U.S. 1070 [103 S.Ct. 490, 74 L.Ed.2d 632]; *Myers v. Kitsap Physicians Serv.* [78 Wash.2d 286], 474 P.2d 109 (Wash.1970); *Mote v. State Farm Mutual Automobile Ins. Co.*, 550 N.E.2d 1354 (Ind.App.1990); *Greenspan v. Travelers Ins. Co.* [98 Misc.2d 43], 412 N.Y.S.[2d] 1009 (N.Y.App.Div.1979); *Blue Cross–Blue Shield of Alabama v. Turner* [43 Ala.App. 542], 195 So.2d 807 (Ala.App.1966); *Erwin v. United Beneficial Life Ins. Co.* [70 N.M. 138], 371 P.2d 791 (N.M.1962). *See also Fields v. Blue Shield of California* [163 Cal.App.3d 570], 209 Cal.Rptr. 781 (Cal.App.1985); *Danzig v. Dikman* [78 A.D.2d 303], 434 N.Y.S.2d 217 (N.Y.App.Div. 1980), *aff'd* [53 N.Y.2d 926, 440 N.Y.S.2d 925] 423 N.E.2d 403 [402] (N.Y.1981) (benefits extend beyond modification of a policy).

**17.** For example, *Jefferson v. State Farm Ins. Co.* [380 Pa.Super. 167], 551 A.2d 283 (Pa.1988), involved a contract containing a "without prejudice" provision that was construed as an incurrence-of-expense policy. Unlike the disputed provision here, however, any ambiguity was eliminated by including a specific end date to the continuation of benefits in the "without prejudice" clause. Likewise, in a number of other cases holding that contracts were incurrence-of-expense policies, there was no ambiguity present. *See, e.g., Wulffenstein v. Desert [DeSeret] Mutual Benefit Ass'n*, 611 P.2d 360 (Utah 1980); *Hein v. American Family Mutual Ins. Co.*, 166 N.W.2d 363, 369 (Iowa 1969).

erage, incurrence-of-expense policy that excludes payment for any service of any type rendered after the policy ends. *See National Union Fire Ins. Co.*, 811 S.W.2d at 555. Such clarity helps to ensure that no party to the contract is misled. Aetna failed to limit its coverage unambiguously, and therefore it is obligated under ERISA to compensate Amy for medical expenses arising from the injury she suffered during the policy term.[18]

### IV.

Although the parties have not briefed the issue, we must address the trial court's judgment for future medical expenses. The provision in ERISA allowing for declaratory or injunctive relief "to clarify [a beneficiary's] rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), may implicitly negate the possibility of recovering those expenses as damages. Accordingly, the trial court should reform the judgment to order that Aetna pay Amy's future medical expenses as they occur. While Amy's pleadings did not expressly request injunctive or declaratory relief, her prayer for future medical expenses can be characterized as a request for declaratory relief under ERISA. Such relief accords with *Gorman* and the general rule that "the petition will be construed as favorably as possible for the pleader." 811 S.W.2d at 548 n. 9 (quoting *Gulf, Colo. & Santa Fe Ry. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963)).

### V.

We also consider whether the trial court erred in failing to award Amy prejudgment interest. The Aetna policy itself does not set out a measure of interest, but under ERISA Amy was entitled to prejudgment interest as a matter of federal common law. *See Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir.1991) (under federal common law, "prejudgment interest should be *presumptively* available to victims of federal [ERISA] law violations") (emphasis in original); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1219 (8th Cir.), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981) (prejudgment interest necessary to accomplish ERISA's remedial purposes). The trial court lacks discretion to deny an award of prejudgment interest in ERISA cases. *Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567, 576 (8th Cir.1984) (district court erred as a matter of law in denying prejudgment interest as to ERISA claim); *Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co.*, 896 F.2d 228 (7th Cir.1990) (prejudgment interest presumptively allowed); *see also Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268, 270 (6th Cir.1990) (citing *Short* in upholding district court's grant of prejudgment interest). The trial court thus erred in failing to award such interest, and we remand to allow it to compute interest according to Texas law. *See Dependahl*, 653 F.2d at 1219–20 (applying state statutory interest rate as federal common law). Because the sum payable is not ascertainable from the contract, the rate of equitable prejudgment interest should be determined by the statutorily specified rate. *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex.1988); *see* Tex.Rev.Civ.Stat. art. 5069–1.05 (Vernon Supp.1992).

### VI.

We find the other points raised by Aetna to the court of appeals to be without merit.[19]

---

18. In demanding that Amy receive nothing since she failed to submit any proof of loss after May 1, 1986, 36 Tex.Sup.Ct.J. at 152 (Cornyn, J., dissenting), the dissent ignores testimony by Michael Miller that Aetna would not provide further coverage after that date. "[A] denial by [the insurer] of liability under the policy is a waiver of proof of loss enabling the insured to maintain a suit on the policy without furnishing such proof." *Sanders v. Aetna Life Ins. Co.* [146 Tex. 169], 205 S.W.2d 43, 45 (Tex.1947); *see also Womack v. Allstate Ins. Co.* [156 Tex. 467], 296 S.W.2d 233, 236–37 (Tex.1957). Because this testimony that Aetna denied coverage was uncontroverted, no jury finding was necessary. *See Sanders*, 205 S.W.2d at 44–45; *American Teachers Life Ins. Co. v. Brugette*, 728 S.W.2d 763, 764 (Tex.1987); *First Southwest Lloyds Ins. Co. v. MacDowell*, 769 S.W.2d 954 (Tex.App.—Texarkana 1989, writ denied); *see also Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 568 (Tex.1990) (Hecht, J., concurring) ("an insurer's denial of a claim before the deadline for presenting the required proof of loss waives that requirement as a matter of law").

19. Among them is Aetna's contention that trial should have been to the court without a jury.

We reverse the judgment of that court and remand the cause to the trial court to compute prejudgment interest, to render judgment as to past "benefits due" and attorney's fees, and to reform the judgment to provide Amy declaratory relief ordering that Aetna pay future expenses as they occur, in accordance with this opinion.

Although some decisions have held that litigants bringing an ERISA action in federal court have no right to a jury trial, *see, e.g., In re Vorpahl,* 695 F.2d 318 (8th Cir.1982), many courts have reached a contrary result after *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112–14, 109 S.Ct. 948 [955–56], 103 L.Ed.2d 841 [80] (1989), which required de novo review of denials of benefit claims under ERISA. *See, e.g., McDonald v. Artcraft Elec. Supply Co.,* 774 F.Supp. 29 (D.D.C.1991); *Steeples v. Time Ins. Co.,* 139 F.R.D. 688 (N.D.Okl.1991); *Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F.Supp. 882 (S.D.N.Y. 1990); *Rhodes v. Piggly Wiggly Ala. Dist. Co.,* 741 F.Supp. 1542 (N.D.Ala.1990). In exercising concurrent jurisdiction, state courts must apply the substantive federal law of ERISA; however, they remain free to apply their own rules of procedure. While the right to trial by jury is a substantive liberty guarantee of fundamental importance, it has been considered a procedural right in the context of state enforcement of federal rights. *See Overcash v. Blue Cross & Blue Shield* [94 N.C.App. 602], 381 S.E.2d 330, 338–39 (N.C.Ct.App.1989) (state right to jury trial applicable to ERISA civil enforcement action). Because Amy's right to trial by jury is clearly established under Texas law, the trial court did not err in affording her that right.