**In re WORLDCOM, INC.,
et al., Debtors.**

**No. 02–13533 (AJG).**

United States Bankruptcy Court,
S.D. New York.

Feb. 11, 2004.

Richard A. Lapping, Craig E. Freeman, of Counsel, Thelen, Reid & Priest, LLP, New York City, for Park Meadows Mall, Ltd., et al.

Marcia L. Goldstein, Lori R. Fife, Adam P. Strochak, of Counsel, Weil, Gotshal & Manges, LLP, New York City, for Debtors and Debtors–in–Possession.

Daniel H. Golden, Ira S. Dizengoff, of Counsel, Akin, Gump, Strauss, Hauer & Feld, LLP, New York City, for Official Committee of Unsecured Creditors.

MEMORANDUM DECISION AND ORDER DENYING LANDLORD'S MOTION FOR ORDER (1) PURSUANT TO 11 U.S.C. § 365(d)(3), TO COMPEL A DEBTOR–TENANT TO PAY CERTAIN POST–PETITION LEASE OBLIGATIONS, OR (2) IN THE ALTERNATIVE, PURSUANT TO 11 U.S.C. § 363(e), TO PROVIDE ADEQUATE PROTECTION FOR LANDLORD'S ALLEGED RIGHT OF SETOFF INTEREST IN AN "EXCESS ALLOWANCE" UNDER THE RESPECTIVE LEASE AGREEMENT

ARTHUR J. GONZALEZ, Bankruptcy Judge.

The two central issues before the Court are (1) whether the landlord can restrict

the timing of when the debtor can exercise an otherwise enforceable right under a commercial lease to apply a certain excess amount of an office improvement allowance toward basic rent due under the lease where no such restriction exists under the lease, and (2) whether the landlord is entitled to adequate protection to preserve its alleged future right to setoff such excess allowance as a pre-petition debt against the debtor's basic rent due under the lease if an amount becomes due in the event the lease is rejected. Upon consideration of the parties' pleadings and oral arguments, the Court finds that the landlord's motion for said relief is without merit.

## I. Jurisdiction and Venue

The Court has subject matter jurisdiction over this matter under sections 1334(b) and 157(a) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding within the meaning of section 157(b)(2)(A), (B) and (O) of title 28 of the United States Code. Venue is proper before this Court pursuant to sections 1408 and 1409 of title 28 of the United States Code.

## II. Background

### A. *Debtors' Chapter 11 Case*

On July 21, 2002 (the "Petition Date"), WorldCom, Inc. and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), including MCI WorldCom Communications, Inc. (the "Debtor"), each filed for voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases had been consolidated for procedural purposes only and are being jointly administered pursuant to orders dated July 22, 2002 and November 8, 2002. On October 31, 2003, the Debtors' Modified Second Amended Joint Plan of Reorganization under chapter 11 of the Bankruptcy Code was confirmed.

### B. *Lease Agreement*

On October 11, 2001, Park Meadows Mall, Ltd. ("Park Meadows") d/b/a TrizecHahn Tower Three Galleria Management, L.P. (collectively with Park Meadows and its managing general partner, Trizec Realty, Inc., "Trizec"), as lessor, and the Debtor, as lessee, entered into a five-year commercial lease agreement (the "Lease") for the Debtor to lease certain office space located in Dallas, Texas (the "Premises"), commencing on December 31, 2001 and ending on December 31, 2006.

The "Basic Lease Provisions" section of the Lease provides, in pertinent part, that " 'Basic Rent' (See Article 2, Supplemental Lease Provisions) shall mean the following amounts which amounts do not include electric expenses for the Premises: Lease Year 1–5, Rate [P]er Square Foot Of Agreed Rentable Area $25.00, Basic Annual Rent $1,097,925,00, Basic Monthly Rent $91,493.75." (table format omitted). Section 2.1 of Article 2 of the Lease defines "Basic Rent" as follows:

> Tenant shall pay as annual rent for the Premises the applicable Basic Annual Rent shown in Item 3 of the Basic Lease Provisions. The Basic Annual Rent shall be payable in monthly installments equal to the applicable Basic Monthly Rent shown in Item 3 of the Basic Lease Provisions in advance, without demand, offset or deduction, which monthly installments shall commence on the Commencement Date and shall continue on the first (1st) day of each calendar month thereafter. . . .

Exhibit D to the Supplemental Lease Provisions of the Lease, which is part of the

Lease,[1] provides for the following Excess Allowance that can be applied to reduce the Debtor's Basic Rent obligations under the Lease:

2.1 *Construction Obligation and Finish Allowance.* Landlord agrees to construct Tenant's Improvements, at Tenant's cost and expense; provided, however, Landlord shall provide Tenant with an allowance up to $22.43 per square foot of Agreed Rentable Area in the Premises (the "Finish Allowance"), which allowance shall be disbursed by Landlord, from time to time when due and payable to the contracting parties (subject to Landlord's disbursement procedures), for payment of (in the following priority) . . . .

. . . .

2.6 *Excess Allowance.* Tenant may apply any unused portion of the Finish Allowance to reduce Basic Rent otherwise payable under the terms of the Lease, provided that the amount of any such reduction shall not exceed the difference between $655,964.48 and the amount of the Finish Allowance applied to Soft Costs.

### C. *Pertinent Procedural History*

In response to an August 26, 2002 motion[2] by the Debtors, the Court issued an order on September 19, 2002 under section 365(d)(4) of the Bankruptcy Code extending the period of time to September 22, 2003 within which the Debtors may assume or reject certain unexpired leases of nonresidential property, including the lease for the premises at issue in this matter. Also, by order dated September 25, 2002, the Court established procedures for, *inter alia,* the rejection of unexpired leases whereby the Debtors must give ten business days written notice, via facsimile or overnight mail, to a non-debtor party (and its counsel, if known) under the respective lease at the party's last known address available to the Debtors and notice to several other concerned parties.

On October 11, 2002, the Debtor notified Trizec by letter that beginning November 1, 2002, it intended to apply its Excess Allowance, that is, approximately $306,000.00 of unused Finish Allowance, toward its monthly basic rent obligations ("Basic Rent") of $91,493.75 per month, which does not include electric expenses for the Premises. In other words, Debtor planned to apply the Excess Allowance toward its Basic Rent due from November 2002 through January 2003.

Trizec responded to the Debtor by letter dated November 1, 2002 stating that it was unwilling to permit application of the Excess Allowance toward Basic Rent until the Debtor assumed the Lease. Trizec also noted in the letter that it was a "secured setoff creditor" in the Excess Allowance and would not allow the Excess Allowance to be applied toward Basic Rent until the Debtor provided adequate protection of its secured setoff interest. Trizec noted that in the event the Lease is rejected or breached, it would have a right to setoff the pre-petition Excess Allowance it owes the Debtor against the Debtor's Basic Rent due under the Lease, where such Basic Rent would be recharacterized as pre-petition debt. Afterwards, Trizec filed a motion (the "Motion") on December 12,

---

1. The introductory paragraph of the Lease states that "[t]his Lease consists of this paragraph, the Basic Lease Provisions, the Supplemental Lease Provisions and each exhibit attached to the Basic Lease Provisions and Supplemental Lease Provisions."

2. While the Court's September 19, 2002 order refers to the Debtors' 365(d)(4) motion as being dated August 23, 2002, the correct date of said motion is August 26, 2002.

2002 for an order, pursuant to sections 365(d)(3) and 363(e) of the Bankruptcy Code, compelling the Debtor to pay post-petition Lease obligations, or, in the alternative, to provide adequate protection of Trizec's alleged interest in the Excess Allowance.

On January 9, 2003, the Debtor filed an objection (the "Objection") to Trizec's Motion and the Official Committee of Unsecured Creditors of WorldCom, Inc., *et al.* (the "Committee") filed a joinder on the same date to the Debtor's Objection to the Motion. A hearing on the matter was held on January 14, 2003. Thereafter, the Court stayed its consideration of the matter until a determination as to the Lease was made. Since, as represented by Trizec's counsel, if the Lease were assumed any amount due would be paid and the issues before the Court would become moot.

Pursuant to the Court's September 25, 2002 order for rejecting unexpired leases, the Debtor sent a written notice (the "Notice") dated April 28, 2003 to Trizec that the Debtor would reject the Lease effective April 30, 2003 and filed the Notice with the Court on such date. Since no objection to the Notice was timely filed by Trizec with the Court, the Court's September 25, 2002 order provided that the Lease was "deemed" rejected on the April 30, 2003 effective date of the Notice.

### III. Parties' Contentions

#### A. *Trizec's Contentions*

Trizec asserts in its January 2003 Motion that aside from the Debtor not paying Basic Rent for November and December 2002 and the Debtor expressing its intention not to pay Basic Rent until February 2003, the Debtor is also delinquent in payment of its monthly pro rata share of electrical expenses. Trizec argues that since section 365(d)(3) of the Bankruptcy

Code requires a debtor to timely perform all obligations under any unexpired lease until such lease is assumed or rejected, the Debtor should be required to timely pay Basic Rent and all of its other post-petition Lease obligations because, as the date of its Motion, the Debtor continued to occupy the Premises and it had not assumed or rejected the Lease. Trizec further contends that the obligations imposed by section 365(d)(3) are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.

Trizec also contends that both the Debtor and itself have an "interest" in the Excess Allowance. Specifically, Trizec maintains that (1) the Debtor's interest is that of creditor of Trizec entitled under the Lease to apply the Excess Allowance to the Basic Rent, and (2) Trizec's interest arises from (a) its ownership and control of the funds compromising the Excess Allowance and (b) from its potential "right to setoff" if the Debtor ultimately rejects the Lease (as it did in April 2003).

Trizec explains that its "right to setoff" arises under the following circumstances. First, if the Debtor rejects the Lease, then section 365(g) of the Bankruptcy Code deems the rejection to be a breach of the Lease arising just prior to the Petition Date. Trizec asserts that under section 502(b)(6) of the Bankruptcy Code it will have a pre-petition claim of at least one year's Basic Rent to the extent it exceeds the Excess Allowance amount, which is slightly more than three months Basic Rent. Trizec further asserts that section 553 of the Bankruptcy Code preserves the right of setoff of mutual debts that arise prior to the commencement of a bankruptcy case subject to certain exceptions and limitations that are not applicable. Trizec maintains that since section 365(g) deems it to have a pre-petition claim against the Debtor and since the Debtor's claim to the

Excess Allowance arose prior to the Petition Date, the respective pre-petition claims will be mutual and subject to setoff under section 553. Trizec also asserts that since section 506(a) of the Bankruptcy Code provides that an allowed claim of a creditor that is subject to setoff under section 553 is a secured claim to the extent of the amount subject to the setoff, its right to setoff is thereby a secured claim.

Trizec asserts that section 363(e) provides, in relevant part, that where an entity has an "interest in property" used or proposed to be used by the debtor-in-possession, the Court must prohibit or condition such use as is necessary to provide "adequate protection" of such interest. Trizec argues that since it is an entity that has an "interest in property," that is, the Excess Allowance, and the Debtor is proposing to apply such allowance to its post-petition rental obligations, the Court is required under section 363(e) to prohibit or condition Debtor's use of the Excess Allowance on the basis of "adequate protection" of Trizec's right to setoff. Further, Trizec argues that if the Debtor rejects the Lease (as it did in April 2003), then the Excess Allowance should be retained by Trizec until it applies for relief from the automatic stay to effectuate its setoff right to the extent that Trizec's claim under section 506(b) exceeds the amount of such allowance, and the remaining balance, if any, would be refunded to the Debtor.

Aside from being entitled to adequate protection of its interest under section 363(e) relating to its alleged right of setoff, Trizec asserts, *inter alia,* that if it were required to pay the Excess Allowance funds to the Debtor for the application that the Debtor proposes, such funds in the Debtor's hands become cash collateral under section 363(a). Trizec argues that the Debtor would be prohibited from using such cash collateral unless Trizec consents or the Court authorizes its use subject to being provided adequate protection under section 363(e).

## B.  *Debtor's Contentions*

The Debtor asserts that at the time it entered into the Lease, certain improvements were needed for the Premises to make it acceptable for the Debtor's use. The Debtor further contends that to encourage the Debtor to enter into the Lease, the parties agreed to the Finish Allowance for the needed improvements and, upon completion of such improvements, the parties agreed that the Debtor could apply the Excess Allowance to its Basic Rent obligations. The Debtor claims the language of the Lease reflects this understanding, that is, section 2.6 of the Lease provides that if the Debtor did not use the Finish Allowance as tenant improvements, the Debtor may apply the Excess Allowance toward Basic Rent. The Debtor, therefore, argues that the Excess Allowance is not really a "debt" owed by Trizec to the Debtor, but rather is a "contractual rent reduction clause."

Thus, in accordance with the Lease terms, the Debtor maintains it requested in its October 2002 letter that the Excess Allowance be applied toward its November 2002 through January 2003 post-petition rental obligations. The Debtor further contends that since it abided by the terms of the Lease, it thereby complied with the requirements of section 365(d)(3) of the Bankruptcy Code to timely perform all the obligations under any unexpired lease of nonresidential real property and, thus, Trizec's Motion has no basis under section 365(d)(3).

Moreover, the Debtor argues that Trizec has no right to setoff because the Excess Allowance cannot, as mentioned above, be characterized as a debt. In particular, the

Debtor explains that a right to setoff, *inter alia*, requires the presence of mutual debts arising prior to the Petition Date. The Debtor asserts that although the terms "claim" and "debt" may be subject to expansive interpretation, including contingent, unmatured claims, the heart of such terms' application is the notion of a "right to payment." The Debtor asserts that under no circumstances will it ever have a "right to payment" of the Excess Allowance; rather, the Excess Allowance is simply a contractual right of the Debtor to reduce its rental obligations. The Debtor thereby contends that since Trizec has no right of setoff, Trizec is not a secured creditor entitled to adequate protection under section 363(e) of the Bankruptcy Code.

In addition, the Debtor argues that even if the Excess Allowance were viewed as a "debt" owing to the Debtor, the transaction is akin to a "recoupment" right of the Debtor. The Debtor asserts that recoupment is a defensive right of a party such as itself, which allows a party to apply post-petition amounts against pre-petition amounts. The Debtor claims that in this matter it is recouping any amounts owed to it under the Excess Allowance clause by reducing their post-petition Basic Rent obligations. The Debtor, therefore, contends that since it is permitted to recoup the Excess Allowance, Trizec is not entitled to rental obligations at issue and no right of setoff ever accrues in Trizec's favor.

Moreover, the Debtor contends that the funds at issue are not a security deposit; rather, the Excess Allowance was established for the benefit of the Debtor, not Trizec. The Debtor maintains that if the parties had agreed that the Excess Allowance would be retained as a security deposit or otherwise returned to Trizec, the parties could have so contracted, but plain-ly did not. The Debtor asserts that any view to the contrary of characterizing the Excess Allowance as a security deposit would inappropriately place Trizec in a superior position to other creditors. Accordingly, the Debtor requests that Trizec's Motion be denied in its entirety.

### C. Committee's Position

The Committee agrees with the arguments set forth in the Debtor's Objection and, accordingly, urges the Court to deny Trizec's Motion in its entirety.

## IV. Discussion

### A. Trizec Is Not Able To Restrict When Debtor Can Apply Excess Allowance To Basic Rent

The Court finds that (1) the existence of the Debtor's right under the Lease to apply the Excess Allowance toward any month that Basic Rent is due and (2) the alleged corresponding ability of Trizec to restrict the timing of exercising such a right, must be examined under the terms of the Lease, where such terms are governed and construed in accordance with Texas law.[3]

While section 2.1 of Article 2 of the Lease generally provides that Basic Rent "shall be payable in monthly installments equal to Basic Monthly Rent [of $91,493.75] in advance, without demand, offset or deduction," Texas law recognizes a well-settled rule of contract construction, that is, the more specific provisions of a contract will control over the more general terms. *Fox v. Parker*, 98 S.W.3d 713, 723 (Tex.App.—Waco [10th Dist.] 2003) (noting that "in contract construction, specific provisions control over general provisions.") (citing, in part, *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex.1994) (ap-

---

**3.** Section 15.4 of the Lease provides that the "Lease shall be governed and construed in accordance with the laws of the State of Texas."

plying same contract interpretation principle)); *Hinojosa v. Housing Authority of City of Laredo,* 940 S.W.2d 763, 766 (Tex. App.—San Antonio [4th Dist.] 1997) (noting that "general terms appearing in a contract are overcome and controlled by specific language dealing the same subject"); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 203(c) (1981) ("specific terms and exact terms are given greater weight than general language"). Here, irrespective of the general language of section 2.1 of Article 2 of the Lease, section 2.6 of Exhibit D of the Lease, in defining the term "Excess Allowance," specifically states that the Debtor "may apply any unused portion of the Finish Allowance to reduce Basic Rent otherwise payable under the terms of the Lease," subject to certain limitations. None of these limitations restrict which month the Debtor may apply the Excess Allowance to Basic Rent. Also, the Court notes that Trizec has failed to show any Lease terms or provisions to the contrary restricting which month the Debtor may apply the Excess Allowance.

Accordingly, since the specific section 2.6 of Exhibit D concerning "Excess Allowance" governs over the general section 2.1 of Article 2 defining "Basic Rent" and since Trizec did not establish that the Lease permits it to restrict the timing of when the Debtor can exercise its right to apply the Excess Allowance, the Court concludes that the Debtor has the right under the Lease to apply the Excess Allowance to any month that Basic Rent is due.[4] *See generally In re HQ Global*

*Holdings, Inc.,* 290 B.R. 78, 82–83 (Bankr. Del.2003) (using a similar contract interpretation analysis for allowing a subleasee-creditor to recoup a tenant improvement allowance against rent due under a commercial sublease with a sublessor-debtor).

### B. *Trizec Is Not Entitled To Adequate Protection Under Section 363(e)*

■ Section 363(e) provides that, at any time on request of an entity with an interest in the property to be used, sold or leased, a bankruptcy court must prohibit or condition such use, sale or lease as is necessary to adequately protect the entity's interest. Section 363(o)(2) "requires that the party asserting an interest in property to prove 'the validity, priority, or extent of such interest.'" *In re Elmira Litho, Inc.,* 174 B.R. 892, 905 (Bankr. S.D.N.Y.1994) (quoting 11 U.S.C. § 363(o)(2)). In other words, section 363(e) essentially requires that where a creditor can demonstrate it has a security interest in the property, such creditor is entitled to adequate protection of such interest. *See generally In re Metromedia Fiber Network, Inc.,* 290 B.R. 487, 490–92 (Bankr.S.D.N.Y.2003) (discussing adequate protection under section 363(e)).

■ The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose of providing adequate protection is to insure that the secured creditor

---

**4.** Even Trizec acknowledges that outside of the bankruptcy context if the Debtor decided not to pay Basic Rent for a month and Trizec opted to sue for such rent the Debtor could counterclaim for the Excess Allowance. At oral argument on January 14, 2003, Trizec counsel alluded to the Debtor's potential right of recoupment under the Lease as follows:

"The same thing is if the landlord simply breached and refused to recognize the dis-

count, the reduction in rent and basically said, look, we're not going to recognize this, it is true if we sued them for the rent outside of Bankruptcy Court they would have a counter-claim essentially for the reduction of rent. It could be—we could be compelled under an equitable theory to pay that or to give them—to apply that rent reduction as they're requesting."

receives the value for which the creditor bargained for prior to the debtor's bankruptcy.[5] *See In re Weyland,* 63 B.R. 854, 859 (Bankr.E.D.Wis.1986); *In re Harrington & Richardson, Inc.,* 48 B.R. 431, 433 (Bankr.D.Mass.1985) (both cases noting section 361 legislative history in section 363(e) context and citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 338–39 (1977), *reprinted in* 1978 U.S.C.C.A.N 5787, 6294–95). However, neither the legislative history nor the Bankruptcy Code require the Court to protect a creditor beyond what was bargained for by the parties.

Contrary to Trizec's assertion in its Motion that it has a potential right to setoff the Excess Allowance against Basic Rent if the Debtor rejects the Lease and thereby should be provided adequate protection, the Court holds that no such protection is warranted because no setoff right exists.

■ The allowance or disallowance of setoff rests within the sound discretion of the bankruptcy court. *Bohack Corp. v. Borden, Inc.,* 599 F.2d 1160, 1165 (2d Cir. 1979). While section 553 of the Bankruptcy Code addresses setoff rights, it neither creates any federal statutory right of setoff nor enlarges a party's right of setoff in bankruptcy. Rather, section 553 merely preserves any right of setoff that exists

under nonbankruptcy law. *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *see In re Westchester Structures, Inc.,* 181 B.R. 730, 738–39 (Bankr.S.D.N.Y.1995) ("[S]ection [553] 'is not an independent source of setoff rights.' ... 'It merely preserves for the benefit of the creditor, any right to setoff that the creditor had under applicable nonbankruptcy law ... and adds additional restrictions.' ") (citations omitted). In determining whether a right of setoff exists, a bankruptcy court must therefore analyze, assuming no federal common law right of setoff is concerned, "the law of the state where the relevant facts transpired." *Westchester Structures,* 181 B.R. at 740 (citation omitted); *see In re McLean Industries, Inc.,* 90 B.R. 614, 618 (Bankr.S.D.N.Y.1988) ("A creditor seeking to setoff a debt under Title 11, therefore must establish a claim and a right to setoff by applying the law of the state where the operative facts occurred.").

■ Since the relevant facts in this matter transpired in Texas, such state law must be examined to determine the validity of Trizec's alleged right of setoff in the Excess Allowance. Under Texas law, "[t]he right of setoff allows entities that owe each other money to apply their debts

5. The legislative history for section 361 of the Bankruptcy Code specifically provides as follows:

   § 361. Adequate protection
   Sections 362, 363, and 364 require, in certain circumstances, that the court determine whether the interest of a secured creditor or co-owner of property with the debtor is adequately protected.
   . . . .
   The concept is derived from the [F]ifth [A]mendment protection of property interests.... It is not intended to be confined strictly to the constitutional protection required, however. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, the purpose of the section is *to insure that the secured creditor receives in value essentially what he bargained for.*
   H.R.Rep. No. 595, 95th Cong., 1st Sess. 338–39 (1977), *reprinted in* 1978 U.S.C.C.A.N 5787, 6294–95 (citations omitted and emphasis added).

to each other.... Where setoff is allowed, there are mutual debts arising from different transactions...." *Sommers v. Concepcion,* 20 S.W.3d 27, 35 (Tex.App.—Houston [14th Dist.] 2000) (citing *In re Malinowski,* 156 F.3d 131, 133 (2d Cir.1998)). In other words, the right of setoff under Texas law depends, in part, on the existence of "mutual debts" between the parties that arise from "different transactions."

■ Here, even if the Court were to assume under Texas law that the Excess Allowance constituted a "debt" due by Trizec to the Debtor, the Court finds no mutual debts existed between Trizec and the Debtor. While Trizec argues that if the Lease were rejected there would be an amount due that would be deemed to be a pre-petition debt, the Court notes that at the time Trizec filed its Motion in December 2002 there was no debt owed by the Debtor to Trizec that would satisfy the "mutuality" requirement of setoff. Rather, the record reflects that Debtor simply decided, as specified in its October 2002 letter to Trizec and as concluded earlier, to exercise its contractual right under the Lease to apply the remainder of its Excess Allowance toward Basic Rent due for the months of November 2002, December 2002 and January 2003.

Even if Trizec were to show that mutual debts existed, the Court further finds that such debts do not arise out of "different transactions"; rather, they clearly arise out of the same transaction, that is, the parties' contractual obligations under the Lease. Texas law clarifies that if debts arise out of the same transaction, such debts are subject to recoupment, not setoff, which Trizec likely did not assert in its Motion because of the general defensive nature of recoupment. *See Concepcion,* 20 S.W.3d at 34–35 (noting differences between recoupment and setoff); *see also* Natalie Regoli, *Setoff in Bankruptcy: A Practical Guide to 11 U.S.C. § 553,* 38-FALL Tex. L. Bus. L. 1, 9 (2002) (discussing recoupment as distinguished from setoff and recoupment's use as a defensive right). Aside from the defensive aspect of pleading recoupment and again, assuming the Excess Allowance could be characterized as a debt, recoupment was unavailable to Trizec at the time Trizec filed its Motion in December 2002 because the Debtor was not in breach of the Lease and, therefore, there was no corresponding debt to recoup against.[6]

■ Moreover, Trizec is not entitled to adequate protection where it would result in enlarging its rights under the Lease. Rather, adequate protection under section 363 is designed to protect the "benefit of

6. Additionally, although not determinative, the Court finds that since Texas law provides that "setoff" is considered a form of "counterclaim," it appears that setoff cannot be used by Trizec in its Motion. *See Latham v. Allison,* 560 S.W.2d 481, 485 (Tex.App.—Forth Worth [2nd Dist.] 1977) (noting that a setoff should have been raised by filing a counterclaim) (quoting *E.E. Farrow Co. v. U.S. Nat'l Bank of Omaha,* 358 S.W.2d 934, 935 (Tex.Civ.App.—Waco 1962) (noting that "counterclaim ... embraces ... setoff" and that a "fundamental philosophy of all setoffs is that they are offered by a defendant in opposition to some money demand asserted by a plaintiff")); *see also Bandy v. First State Bank,* 835 S.W.2d 609, 618 (Tex.1992) ("The effect of the setoff was to allow a defendant in a suit for a debt to raise a debt owed by a plaintiff to the defendant as a defense or counterclaim."); *see generally* 67 Tex. Jur. Setoffs, Counterclaims, and Cross Actions § 3 (2003) ("A setoff is a form of counterclaim originally created by statute, which brings together obligations of opposing parties to each other and, by judicial action, makes each obligation extinguish each other.") (footnotes and citations omitted). Also, it does not appear that the Debtor could sue to recover the Excess Allowance, thereby, enabling Trizec to raise past due rent as a setoff.

the bargain." Here, it is clear that under the terms bargained for under the Lease Trizec took the risk that the Debtor may seek to apply the Excess Allowance as proposed and thereafter default on the Lease. By preventing the Debtor from exercising its rights under the Lease as Trizec requests in its Motion would in these circumstances enhance Trizec's rights beyond what it bargained for under the Lease. The Lease contemplated that the use of the Excess Allowance would be reduced in value when applied toward Basic Rent and no security was created under the Lease for preventing such reduction in value.

█ Also, while Trizec asserts in its Motion that part of its security interest in the Excess Allowance arises from its ownership and control of the funds compromising such allowance, no security deposit[7] was created under the Lease to secure an interest in the allowance and Trizec's counsel acknowledged at oral argument that the Excess Allowance was not placed into a separate fund. Rather, the Excess Allowance was just a book entry maintained by Trizec. Indeed, the Court concludes that the terms of the Lease clearly reflect that no security interest was created in the Excess Allowance and, therefore, Trizec is not, as it asserted, a "secured setoff creditor," but merely an "unsecured creditor" that is not entitled to adequate protection. *See generally In re Dairy Mart Convenience Stores, Inc.,* 351 F.3d 86, 90–91 (2d Cir.2003) (concluding that since a corporation was an unsecured creditor vis-à-vis the bankruptcy estate, it was ineligible to receive adequate protection under section 361 of the Bankruptcy Code; rather, the

adequate protection provision of section 361 only protects secured creditors).

## V. Conclusion

Accordingly, based on the foregoing, the Court finds that Trizec cannot restrict when the Debtor can exercise its right to apply the Excess Allowance toward Basic Rent due, subject to certain limited exceptions specified under the terms of the Lease. Since the Debtor had a right under the terms of the Lease to apply the Excess Allowance to Basic Rent due for the months of November 2002, December 2002 and January 2003, Trizec's motion for an order pursuant to section 365(d)(3) of the Bankruptcy Code to compel the Debtor to pay post-petition Basic Rent is moot and, therefore, Trizec is not entitled to an administrative expense claim as to the Basic Rent. Further, the Court finds that Trizec is not entitled to adequate protection for the Excess Allowance because it does not have, *inter alia,* a secured setoff interest in such an allowance. Nevertheless, the Court finds that to the extent post-petition rental obligations for the Debtor's monthly pro rata share of electrical expenses remains due and owing, Trizec is entitled to assert an administrative expense claim against the Debtor under section 503 of the Bankruptcy Code.

Therefore, for the reasons set forth herein, it is hereby:

ORDERED, that the Debtor properly exercised its rights under the Lease to apply the Excess Allowance to its post-petition Basic Rent obligations under the Lease; and it is further

ORDERED, that, based on the foregoing, Trizec's motion pursuant to section

---

**7.** The terms of the Lease demonstrate that Trizec did not contract for the Excess Allowance to be retained as a security deposit. Item 11 of the "Basic Lease Provisions" provides that " 'Security Deposit' shall mean:

Not applicable" and Article 3 of the Lease, entitled "Security Deposit," has the phrase "Intentionally Omitted" inserted underneath it.

365(d)(3) of the Bankruptcy Code to compel the Debtor to pay post-petition Basic Rent is denied as moot; and it is further

ORDERED, that Trizec is not entitled to adequate protection for the Excess Allowance; and it is further

ORDERED, that to the extent there remain any post-petition rental obligations for monthly pro rata share of electrical expenses due and owing under the Lease, Trizec is entitled to an administrative expense claim for such obligations.