Tremblay v. Wesco, No. 358-01 Cncv (Katz, J., July 14, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                             Docket No. 358-01 CnCv

TREMBLAY

v.

WESCO, INC.

ENTRY

Plaintiff was very badly injured by a fall from a third-floor fire escape of a building in which his wife rented a mini-mart and gas station from defendant Wesco. He has sued to recover for his personal injuries. Wesco here moves for summary judgment on the ground that its lease to the wife provided that she would indemnify it from personal injury claims, and that plaintiff guaranteed the wife's obligations, including the indemnity. Hence, to the extent plaintiff may be able to recover from

defendant, he has to return any recovery.  If he keeps nothing there can be no recovery, no case.

We have reviewed the lease, and find it ambiguous at best.  We shall review the pertinent portions, which extend throughout the several documents making up the lease.  Perhaps it is fit to preface this catalog by noting what is not included—any clear definition of "premises," although that term is used often throughout the document.  But we digress.

Starting at the very top, the "Face Page" is denominated in capital letters "RETAIL MINI-MART AND GAS STATION LEASE . . . ."  It defines "leased premises" as "Fastop, 155 Main Street, Winooski, VT."

The multi-part document next proceeds to what are termed "recitals."  This document notes:

Landlord does hereby lease to Tenant and Tenant hereby leases from Landlord the following *retail* premises:

The Gulf/Fastop Mini-Mart, located at 155 Main Street . . . .  Being all and the same property . . . conveyed to Timberlake Associates by . . . [prior holders of record title.]

together with all rights-of-way, easements, driveways and pavements, curb and street front privileges thereunto belonging and together with all the improvements and equipment thereon or connected therewith, including the

property and equipment now located thereon as listed in the
Fixed Assets Ledger Form . . . . (Emphasis supplied)

The tenant agrees, in paragraph 6, "to conduct the type of business specified on the Face Page at the premises, to use and operate the premises for the sale of Landlord's motor fuels and petroleum products . . . ." Farther into that paragraph, tenant agrees "to operate the business conducted on the premises," implying a single business. She next agrees "(h) to make no assignment . . . nor sublet the premises or any part thereof."

Continuing to paragraph 8, we find that "TENANT HAS INSPECTED THE LEASED PREMISES . . . AND HAS FOUND THEM TO BE IN GOOD WORKING ORDER . . . ." We will skip paragraph 9, if only momentarily. Paragraph 27 provides that if the rent be in arrears, the landlord may forthwith cancel this lease or enter said premises "by force or otherwise." Paragraph 31, entitled "Entire Agreement" starts out "THIS RETAIL MINI-MART AND GAS STATION LEASE . . . ."

Exhibit B, the Fixed Assets Ledger Form apparently seeks to list with precision everything intended to be included in the agreement. Its first item is "One [denoting quantity] - Mini-Mart *being the first floor only of a three story building."* (Emphasis supplied).

Against this background, we return to Paragraph 9, Indemnity. There, tenant agrees to indemnify landlord "from any and all claims for injuries . . . loss or damage of any kind . . . to person or property . . . from or arising out of . . . the condition or use of the premises, all buildings, improvements and equipment or Tenant's operation thereon . . . or (f) any

other liability arising from the premises . . . ."

These appear to be the pertinent facts.

The interpretation of this lease instrument is a question of law. Quenneville v. Buttolph, 2003 VT 82, ¶¶ 9, 14; Al Baraka Bankcorp v. Hilweh, 163 Vt. 148, 153 (1994). In construing the lease, it is the court's duty to ascertain the intention of the parties who entered into it. In re Verderber, 173 Vt. 612, 615 (2002).

The question quickly comes down to one of whether the fire escape and third floor constituted rented premises, which were leased to tenant, the plaintiff's wife, and to which the indemnity agreement attaches. There is probably some degree of ambiguity, in that at least two of the cited references suggest perhaps the lease agreement did extend to the upper floors. Wesco points to clause "being all and the same property conveyed to" Wesco's sister/real estate holding company. Quite clearly, the prior owners of the property conveyed the entire building to that sister company, including its upper floors. And the Indemnity paragraph, 9, includes the phrase "all buildings." But these are the only two references which suggest any intent to lease space beyond the first floor.

By distinction, we note a number of considerably more specific references which clearly limit themselves to the Mini-Mart premises and the first floor. The strongest and clearest indication of these comes from Exhibit B, which is the parties' attempt to actually catalog what was intended to be leased in this particular transaction, which was quite clearly created solely for this transaction, and which states "Mini-Mart being the first floor only of a three story building."

We also place considerable weight on the "Acceptance" paragraph, 8, in which the tenant has found the premises to be in good working order. Against the bare language of this paragraph 8, it is telling to compare the Statement of Undisputed Facts put forth by defendant Wesco:

> 4. At the time of Mr. Tremblay's accident, the second floor of the Building contained an apartment that was condemned as unfit for human habitation.

> 5. At the time of Mr. Tremblay's accident, the third floor of the Building contained an unrented apartment.

Did the parties to the lease, Wesco and Mrs. Tremblay, actually intend that the condemned apartment, unfit for human habitation, was inspected and accepted by her and "found to be in good working order?" A dubious conclusion. Moreover, the language of paragraph 6 suggests the lease parties intended tenant to pursue only one business. This contradicts the notion that tenant would also occupy the second or third floor residential spaces. The more consistent interpretation is that only the first floor retail space was intended to be leased.

Of course, we understand that what really is occurring is that a form lease is being lifted off the shelf, or in modern terms the word processor, and that not every word was actually negotiated, or considered, or probably even read. But that is precisely why Exhibit B's precise listing of what was actually being intended to be included within the lease of these premises is entitled to primacy, in determining the parties' real intent. See, e.g, In re WorldCom, Inc., 304 B.R. 611, 617 (Bkrtcy S.D.N.Y. 2004);   Brinderson- Newberg v. Pacific Erectors, 971 F.2d

272, 279 (9th Cir. 1993); <u>Otto Interiors v. Nestor</u>, 763 N.Y.S.2d 439 (N.Y.City Civ. Ct. 2003); <u>Foote v. Viking Ins. Co. of Wisconsin</u>, 790 P.2d 659, 661 (Wash.App. 1990); Restatement (Second) of Contracts § 203(c)(d), cmts. e, f; 17A Am. Jur. 2d <u>Contracts</u> § 367 ("It is a general rule that where there are general and special provisions in a contract relating to the same thing, the special provisions control."). The Indemnity paragraph's mention of "building," and the real estate jargon "being *all* and the same property" must be recognized for what they are, the first, just part of a much-used general form, and the second, a formulaic incantation.

We are mindful that even some ambiguity may render the lease's proper interpretation a matter for trial. But this motion comes before the court without any parol evidence having been proffered. Williston teaches that even in the face of some ambiguity, if the only source of decision remains the document itself, its proper interpretation remains a question of law. 11 S. Williston & R. Lord, <u>A Treatise on the Law of Contracts</u> § 30.7, at 91–92 (4th ed. 1999) ("However, in the absence of any relevant extrinsic evidence, any ambiguity in a written contract is to be resolved by the court as a matter of law."); see also <u>Isbrandtsen v. North Branch Corp.</u>, 150 Vt. 575, 579–80 (1988) ("If ambiguity is found on that basis, the court may then rely on subordinate rules of construction in order to interpret the meaning of the disputed terms.").

The present motion by Wesco ultimately seeks enforcement of its indemnity claim, arising out of the lease instruments. Such claims are not to be given loose interpretations or stretched beyond the fair, reasonable and necessary meaning of their words. <u>Colgan v. Agway</u>, 150 Vt. 373, 374–75 (1988); see also <u>Hamelin v. Simpson Paper Co.</u>, 167 Vt. 17, 22

(1997) (Gibson, J., dissenting). Under this standard, we interpret the indemnity section of the lease, Wesco's broad "building" and "premise" language, to be controlled by the more specific language in Exhibit B and other sections, which limit the leased property to the first floor mini-mart. The second and third floor of the building are therefore outside the scope of the lease and not covered by the agreement. Since plaintiff's accident took place on the third floor, he was effectively off the leased premises and outside the scope of the indemnity clause. As a matter of law Wesco is not entitled to indemnity from the plaintiffs. To hold otherwise would extend the contract beyond its terms.

Therefore, defendant's motion for summary judgment is denied.

Dated at Burlington, Vermont, _____, 2004.

_____
Judge